[No. 24914–2–I.   Division One.   December 31, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. HAROLD A.
BROWN, *Appellant.*

62

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

SCHOLFIELD, J.—Harold A. Brown appeals his conviction for second degree assault. We remand for resentencing.

## FACTS

On May 12, 1989, Brown was charged by information with second degree assault upon his 11–year–old son, Jesse Brown. The charge arose from conduct occurring on March 22, 1989. On that morning, Jesse was sent to the school nurse after getting in a fight with several other boys. In addition to some marks on the child's face and shoulder, the nurse noticed bruises and marks on his buttocks that she did not believe came from the fight with the other boys. The nurse testified that she called Child Protective Services (CPS) after observing "massive bruising and damage . . . with bright red colorings, swollen tissue and blue marks across the full width of the buttocks."

Jesse told the CPS worker that his father had made him remove his pants and had spanked him that morning after learning Jesse had misbehaved in school. The CPS worker also testified that she was surprised at Jesse's willingness to remove his pants in her presence, and she testified that boys of that age normally show more reticence.

Jesse was examined by medical personnel at the hospital, and according to their trial testimony, the bruises and marks on the buttocks were consistent with being hit with a

belt or a stick. One doctor estimated that at least eight or nine blows were inflicted. Another doctor stated that she believed that the degree of severity of the bruises indicated that a significant amount of force was used.

Jesse's teacher testified that Jesse was a student who had difficulties with social skills and who engaged in name-calling, swearing, throwing things, and interfering with others' school work. The teachers had instituted a disciplinary/reward program for Jesse, but there were times when this was inadequate. At these times, the teacher or the principal would contact Brown, who would then go to the school to discuss Jesse's behavior. Brown testified that he had missed so much work that he was concerned that he might lose his job.

Jesse's teacher left a message on Brown's answering machine on March 21, 1989, because of Jesse's inappropriate behavior in resisting work and using crude language. The teacher and Brown spoke on the morning of March 22. Brown testified that after the conversation he spanked Jesse with a belt. Brown admitted that he "lost it" while spanking the child, and that he had used "a little too much force."

Although instructed on the lesser included offenses of third and fourth degree assault, the jury found Brown guilty of second degree assault. At sentencing, the prosecutor indicated that Brown's calculated offender score was 6, based on a 1966 burglary conviction, three concurrent 1967 convictions—one for burglary, one for strong-arm robbery, and two counts of robbery which were counted as one and doubled as a violent offense—a 1975 possession of heroin conviction, and a 1982 assault conviction that was doubled as a violent offense. The defense argued that there was no documentation to prove the constitutional validity of the prior convictions and to determine whether they were class B or class C felonies, which might be subject to "wash-out" provisions. Brown was apparently discharged on the 1967 convictions in 1972 and served no time on the possession charge.

The court imposed an exceptional sentence of 90 months. The court's written exceptional sentence findings stated that the defendant knew that the victim was particularly vulnerable due to extreme youth and that the defendant used his position of trust and confidence as the child's father to facilitate the commission of the crime.

However, in its oral decision, the court stated as follows:

> It's not just an isolated incidence of a spanking. The total reaction of the lad to all of the circumstances and the background here makes this Court feel that this was not some dad spanking a son; this was a, as he said, he lost it, and he loses it all the time. The habitual habits of violence and abuse are well documented, and the habitualness of his actions—the man is forty–four now—are such that the probability of rehabilitation is very slight.
>
> I think Mr. Johnsen, who has been professionally acute over the years, best sums up the Court's thinking. "It would seem appropriate that Brown be confined until such time that this child is no longer a minor." On the basis of that I'm going to sentence Mr. Brown to ninety months . . . so that when he is out the lad is eighteen plus.

When asked by the defense attorney what the court was finding as the standard range, the court stated that it was accepting the State's calculation of 33 to 43 months. However, the court further stated that the accuracy of the standard range was not really an issue because the exceptional sentence was based on when Jesse would reach majority: "I want the man behind bars until at least the majority is reached by the son."

This appeal timely followed.

### CONSTITUTIONALITY

Brown was charged under RCW 9A.36.021(1)(a) and (g). These subsections read in pertinent part as follows:

> A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
>
> (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or
>
> . . . .

(g) Knowingly inflicts bodily harm which by design causes such pain or agony as to be the equivalent of that produced by torture.

Brown argues that subsection (g) is unconstitutionally vague.

■■ A statute is presumed constitutional, and the party challenging the legislative enactment has the burden of proving it is unconstitutional. *State v. Rhodes,* 92 Wn.2d 755, 600 P.2d 1264 (1979). "A statute is void for vagueness under the Fourteenth Amendment if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *Myrick v. Board of Pierce Cy. Comm'rs,* 102 Wn.2d 698, 707, 677 P.2d 140, 687 P.2d 1152 (1984). "[I]f men of ordinary intelligence can understand a penal statute, notwithstanding some possible areas of disagreement, it is not wanting in certainty." *State v. Maciolek,* 101 Wn.2d 259, 265, 676 P.2d 996 (1984).

In *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975), the Washington Supreme Court set forth guidelines for determining constitutionality: The constitutional requirement of definiteness of statutes has two bases. The first is that citizens must have notice of what conduct is proscribed. Secondly, vague laws offend due process because they "leave 'judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.'" *Miller,* at 544 (quoting *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 15 L. Ed. 2d 447, 86 S. Ct. 518 (1966)).

■ Brown's specific allegations of vagueness are that the terms "torture" and "by design" are not defined by the statute. With respect to the word "torture", the court's instructions defined the term as "the infliction of severe or intense pain as punishment or coercion, or for sheer cruelty." Instruction 9. The jury was not left to speculate as to

the meaning of this term, and *Brown* did not object to this instruction at trial.

Therefore, the only question is whether the term "torture" is one of common understanding, such that citizens have notice of what conduct is proscribed. The State contends that other jurisdictions have held that the word torture is not vague. In *State v. Cornell*, 304 Or. 27, 741 P.2d 501 (1987), the Oregon Supreme Court construed a statute that elevates murder to aggravated murder if it is committed "'in the course of . . . torture of the victim.'" *Cornell*, 304 Or. at 29 (quoting Or. Rev. Stat. § 163.095(1)(e)). The *Cornell* court held that the word "torture" may be commonly understood, and that while they might vary slightly, all definitions of the term contain sufficient common elements. Thus, the *Cornell* court determined that a fact–finder would not have unbridled discretion to apply the term, and that the word "torture" provides notice, with a reasonable degree of certainty, of what conduct is forbidden. Therefore, the *Cornell* court held that the term "torture" is not vague. *Cornell*, 304 Or. at 32.

Applying such reasoning to RCW 9A.36.021, we hold that the use of the term "torture" in this statute is not unconstitutionally vague. In addition, the phrase "by design" is a commonly understood term meaning "intentionally." Thus, we determine that Brown's void for vagueness challenge must fail.

### SUFFICIENCY OF THE EVIDENCE

■ Jury verdicts in criminal cases must be unanimous under Washington law. *State v. Stephens*, 93 Wn.2d 186, 607 P.2d 304 (1980). However, when alternative means of committing a single crime are charged and the State presents substantial evidence to support each alternative, jurors need not be unanimous as to the mode of commission. *State v. Arndt*, 87 Wn.2d 374, 553 P.2d 1328 (1976). In *State v. Whitney*, 108 Wn.2d 506, 739 P.2d 1150 (1987), the Washington Supreme Court set forth the appropriate test as to each alternative as being "supported by substantial

evidence such that any jury could find guilt beyond a reasonable doubt . . .". *Whitney*, at 512. Thus, it can be said that the test for each alternative is the same as the standard sufficiency of the evidence test.[1]

Here, Brown only challenges the sufficiency of the evidence regarding RCW 9A.36.021(1)(g), the "torture" alternative. He argues that the State presented no evidence that his actions were designed to cause the kind of pain that would be the equivalent to that caused by torture.

Examining the evidence in the light most favorable to the State, we find that it was sufficient with respect to the "torture" alternative. The evidence presented by the State was that Jesse testified that his father hit him "more and more", and that Jesse "screamed again and again", but Brown "just kept on doing it." From this testimony, it is certainly possible that the jury could have determined that Brown continued to beat Jesse, knowing that he was inflicting intense pain.

In addition, although the photographs of Jesse's buttocks are not part of the appellate record, examination of the medical testimony indicates that the jury would have been able to draw certain inferences from the photographs as to the amount of pain inflicted. The medical testimony also indicated that at least eight or nine blows were inflicted, and it appeared from some of the marks that the belt buckle came in contact with the child's buttocks. The medical testimony also indicated that "a significant amount" of force was used to cause the injuries shown in the photographs. Finally, Brown's own testimony indicated that he lost his temper while disciplining Jesse, and that he used "a little too much force" while hitting the child.

---

[1] A challenge to the sufficiency of the evidence to convict cannot be sustained if, considering the evidence in the light most favorable to the State, a rational trier of fact could have found all of the elements of the crime charged beyond a reasonable doubt. *State v. Baeza*, 100 Wn.2d 487, 670 P.2d 646 (1983); *see also Jackson v. Virginia*, 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781, *reh'g denied*, 444 U.S. 890 (1979).

Brown's admissions, coupled with Jesse's testimony and the medical evidence, are sufficient, looking at the evidence in the light most favorable to the State, that reasonable persons could have found Brown guilty of this alternative beyond a reasonable doubt. Thus, Brown's sufficiency of the evidence argument must fail.

### OFFENDER SCORE

RCW 9.94A is a determinate sentencing scheme. The trial court is required to decide "with exactitude" the number of years, months, or days that a defendant will serve. RCW 9.94A.030(14).[2] One of the reasons for adopting such a sentencing scheme is to ensure that punishment for a criminal offense is "proportionate to the seriousness of the offense and the offender's criminal history[.]" RCW 9.94A-.010(1).[3]

■ The statute requires that a defendant's criminal history be used to calculate an "offender score" which, when combined with the seriousness of the present offense, yields a standard range from which the trial court will, under normal circumstances, choose a specific length sentence. *See* RCW 9.94A.310, .360, .370. However, RCW 9.94A.120 provides for a sentence outside the standard range as follows:

> (2) The court may impose a sentence outside the standard sentence range for that offense if it finds, considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence.

---

[2]RCW 9.94A.030(14) reads in pertinent part: "'Determinate sentence' means a sentence that states with exactitude the number of actual years, months, or days of total confinement, of partial confinement, of community supervision, the number of actual hours or days of community service work, or dollars or terms of a legal financial obligation."

[3]RCW 9.94A.010 reads in pertinent part: "The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to . . . (1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history[.]"

(3) Whenever a sentence outside the standard range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law. A sentence outside the standard range shall be a determinate sentence.

It is obvious from the wording of the statute that the sentencing court must first determine the standard range before deciding to impose an exceptional sentence.

Here, Brown contested the State's calculation of his offender score, arguing that the State had failed to explain whether or not the "wash–out" provisions of the statute applied to the 1966 and 1967 convictions, and he also argued that it was unclear whether the 1975 possession of heroin charge resulted in a conviction.

Former RCW 9.94A.360(2) provides for "wash–out" of some prior felonies as follows:

Except as provided in subsection (4) of this section, class A prior felony convictions shall always be included in the offender score. Class B prior felony convictions shall not be included in the offender score, if since the last date of release from confinement (including full–time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent ten consecutive years in the community without being convicted of any felonies. Class C prior felony convictions shall not be included in the offender score if, since the last date of release from confinement (including full–time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent five consecutive years in the community without being convicted of any felonies. . . .

Because several of Brown's convictions were over 20 years old and one of the convictions was over 10 years old, it was important here to determine the classes of the felonies (the colloquy indicates that these were out–of–state convictions) and whether a conviction occurred for the heroin possession charge to see whether the "wash–out" provisions applied.

The State argues that because the trial court based its exceptional sentence not on the (possibly incorrect) offender score, but on when Jesse would reach age 18, the question of the correct offender score need not be reviewed, citing *State v. Thomas,* 57 Wn. App. 403, 788 P.2d 24, *review denied,* 115 Wn.2d 1003 (1990). In *Thomas,* the trial

court utilized an offender score of 2, while the appellate court determined that the correct offender score was 1. The crime at issue was vehicular homicide, and the standard range with an offender score of 1 is 21 to 27 months, and with an offender score of 2 is 26 to 34 months. The trial court imposed an exceptional sentence of 60 months.

The *Thomas* court concluded, without analysis, that the error in calculating the offender score did not affect the exceptional sentence. *Thomas,* at 411. The *Thomas* court noted that in *State v. Nordby,* 106 Wn.2d 514, 723 P.2d 1117 (1986), the court determined that an error in calculating an offender score resulting in a standard range of 3 to 9 months instead of 6 to 12 months would not affect the validity of a 16–month exceptional sentence. However, the *Nordby* court also noted that neither party had briefed the issue. *Nordby,* at 517 n.3.

Here, it appears that Brown's offender score might be as low as 3 or 4. The standard range sentence for second degree assault with an offender score of 3 is 13 to 17 months, and for an offender score of 4 is 15 to 20 months. Thus, there is a significant difference between these standard ranges and the 33 to 43 months for an offender score of 6. This court cannot say that the much lower standard range would not have an impact on the amount of time given for the exceptional sentence.

Failure to base a sentence on the proper offender score, and thus, on the crime itself, contravenes the stated purposes of the Sentencing Reform Act of 1981. Failure to remand this case for an accurate determination of Brown's offender score would indicate to trial courts that they are free to impose any sentence not exceeding the statutory maximum, so long as appropriate aggravating factors are recited. This would subvert the whole determinate sentencing scheme. In addition, it would be impossible for an appellate court to review whether an exceptional sentence was clearly excessive, if it were not known what the standard range sentence would have been. This case must be

remanded to the trial court for determination of the correct offender score.

## EXCEPTIONAL SENTENCE

RCW 9.94A.390 sets forth certain "aggravating factors" that the court may consider in deciding to impose an exceptional sentence greater than the standard range for the crime. The factors are illustrative and not exclusive. That statute reads in pertinent part:

(2) Aggravating Circumstances

. . . .

(b) The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.

(c) The current offense was a major economic offense or series of offenses, so identified by a consideration of any of the following factors:

. . . .

(iv) The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense.[4]

RCW 9.94A.210 provides for review of an exceptional sentence as follows:

(2) A sentence outside the sentence range for the offense is subject to appeal by the defendant or the state. The appeal shall be to the court of appeals in accordance with rules adopted by the supreme court.

. . . .

(4) To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

(5) A review under this section shall be made solely upon the record that was before the sentencing court.

The Washington Supreme Court in *State v. Nordby, supra,* set forth the proper method of inquiry for the

---

[4]The statute applies the position of trust factor only to major economic offenses or VUCSA. *See* RCW 9.94A.390(2)(c), (d). However, Washington courts have applied the factors more generally.

appellate court on review: Initially, the appellate court must make the determination of whether the sentencing judge's reasons for imposing an exceptional sentence are supported by the record. This is a factual determination, and the trial court will not be reversed unless its reasons are clearly erroneous. The appellate court must then determine whether, as a matter of law, the sentencing judge's reasons are substantial and compelling to justify imposition of an exceptional sentence.

Here, the trial court's written findings indicated that two "aggravating circumstances" supported the giving of an exceptional sentence:

> 1. The defendant knew the victim of the offense was particularly vulnerable and incapable of resistance due to extreme youth. RCW 9.94A.390(2)(b);
> 2. The defendant used his position of trust and confidence, as the father of the victim, to facilitate the commission of the offense. RCW 9.94A.390(2)(c).

In *State v. Handley,* 115 Wn.2d 275, 796 P.2d 1266 (1990), the Washington Supreme Court stated that the aggravating factor of particular vulnerability may be applied if the defendant knew or should have known that the victim was particularly vulnerable and that it was likely that the crime contemplated would injure the victim. *Handley,* at 284–85. An exceptional sentence is justified on the basis of particular vulnerability if:

> the circumstances of a particular crime distinguish it from other crimes within the same statutory definition.

*State v. Fisher,* 108 Wn.2d 419, 424, 739 P.2d 683 (1987) (citing D. Boerner, *Sentencing in Washington* § 9.6 (1985)).

An example of how this test should be applied was set forth in *State v. Holyoak,* 49 Wn. App. 691, 745 P.2d 515 (1987), *review denied,* 110 Wn.2d 1007 (1988), a prosecution for first degree assault. In that case, the defendant choked the victim, struck her with his fists, and repeatedly struck her head with a block of concrete and pounded her head on concrete pavement, in an attempt to coerce her to allow him to have sex with her. The victim was 14 years

old, 5 feet tall, and weighed 100 pounds. *Holyoak,* at 693–95.

In analyzing the appropriateness of an exceptional sentence of 246 months, where the standard range was 93 to 123 months, the *Holyoak* court held that the trial court's finding of particular vulnerability was supported by the evidence. The *Holyoak* court stated as follows:

> In this instance, the victim's diminutive size not only made it more likely that she would be chosen as a victim, but it also made it more likely the perpetrator would succeed in inflicting severe injury.

*Holyoak,* at 695. The *Holyoak* court distinguished a case cited by the defendant, *State v. McClay,* 310 N.W.2d 683 (Minn. 1981), in which the Minnesota Supreme Court rejected a claim of particular vulnerability with this statement:

> There is no question but that the person abducted, Patricia Barnett, is a petite person and in certain situations her size might make her particularly vulnerable, but we do not believe she should be deemed any more vulnerable in the face of a gun than a larger person because a gun can kill either quite easily.

*Holyoak,* at 695 (quoting *McClay,* at 685).

Here, the jury was instructed with the second paragraph of WPIC 35.50, appropriate when an assault consists of actual battery, as follows:

> An assault is an intentional touching or striking or cutting or shooting of the person or body of another, regardless of whether any actual physical harm is done to the other person.

However, as Jesse's parent, Brown was *permitted* to intentionally touch or strike the child. His crime was not the battery itself, but the excessive force utilized in committing the battery. RCW 9A.16.100 states as follows:

> It is the policy of this state to protect children from assault and abuse and to encourage parents, teachers, and their authorized agents to use methods of correction and restraint of children that are not dangerous to the children. However, the physical discipline of a child is not unlawful when it is reasonable and moderate and is inflicted by a parent, teacher, or guardian for purposes of restraining or correcting the child.
> . . .

The following actions are presumed unreasonable when used to correct or restrain a child: (1) Throwing, kicking, burning, or cutting a child; (2) striking a child with a closed fist; (3) shaking a child under age three; (4) interfering with a child's breathing; (5) threatening a child with a deadly weapon; or (6) doing any other act that is likely to cause and which does cause bodily harm greater than transient pain or minor temporary marks. The age, size, and condition of the child and the location of the injury shall be considered when determining whether the bodily harm is reasonable or moderate. This list is illustrative of unreasonable actions and is not intended to be exclusive.

The jury was instructed in language tracking the first paragraph of the statute.[5]

In determining the applicability of the "particularly vulnerable" aggravating factor here, this court does not decide whether Jesse was particularly vulnerable due to his young age *to assault*. Rather, we decide whether the child was particularly vulnerable due to his young age *to the unreasonable or immoderate force used in punishing him*. The record is devoid of any evidence that Jesse was unusually susceptible to bruising or unusually sensitive to pain, and certainly not by reason of his age, which was the basis of the trial court's finding.

Even if such evidence was contained in the record, RCW 9A.16.100 clearly states that a child's age, size and condition shall be considered in determining whether the bodily harm was reasonable, that is, whether a crime was committed at all. In deciding whether to impose an exceptional sentence, the trial court must take into account factors "other than those which are necessarily considered in computing the presumptive range for the offense." *State v. Nordby*, 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). Because Jesse's age must necessarily have been considered in determining whether a crime was committed at all, his age could not also be used to enhance Brown's sentence using the "particularly vulnerable" aggravating factor.

---

[5]The proposed defense instructions list that instruction as WPIC 17.03.

The second aggravating factor used by the trial court below in support of Brown's exceptional sentence was "abuse of trust". The State argues that the assault arose directly out of Brown's parental relationship, which is one of trust, citing *State v. Fisher, supra.* In that case, Fisher was convicted of two counts of indecent liberties upon the same victim. The trial court imposed exceptional sentences on both charges. One of the grounds set forth by the trial court to support the giving of the exceptional sentences was that the defendant placed himself in a position of trust and confidence with the victim in order to facilitate the commission of the crimes. *Fisher* had spent time playing at a neighborhood pool with the victim and several other children and eventually volunteered to accompany the victim to the restroom. *Fisher,* at 421.

On appeal, the *Fisher* court questioned whether the trust relationship was significant enough to be considered a substantial and compelling reason for an exceptional sentence. Because the other grounds listed were sufficient to justify the exceptional sentence, the *Fisher* court declined to decide the significance of the trust factor. However, in dicta, the *Fisher* court noted that the defendant had become acquainted with the victim only a few days before the incidents occurred and that a relationship extending over a longer period of time, or one within the same household, would create more of a trust relationship, providing a substantial reason for the exceptional sentence. *Fisher,* at 427.

In *State v. Pryor,* 56 Wn. App. 107, 782 P.2d 1076 (1989), *aff'd,* 115 Wn.2d 445, 799 P.2d 244 (1990), a prosecution for indecent liberties, Division Three commented that although the original legislative intent was to use abuse of trust as an aggravating factor in economic cases, the factor had been recognized as a legitimate aggravating factor in other instances, citing *State v. Harp,* 43 Wn. App. 340, 717 P.2d 282 (1986) and *State v. Shephard,* 53 Wn. App. 194, 766 P.2d 467 (1988). Both of those cases found an abuse of trust where either a stepfather or an uncle was in a care

giver role during the time when he sexually molested the girls in his charge. Similarly, in *Pryor*, the defendant was baby–sitting the victim when he committed indecent liberties. *Pryor*, at 115.

However, these cases can be distinguished from the case before us, because in each of these the children's primary caretaker had *entrusted* the care of the children to each of the defendants. Despite broad language found in some of the opinions, the trust relationship that was abused in those cases was between the primary caretakers and the defendants. To hold here that Brown abused a trust relationship would mean that any time a parent commits an assault upon his or her child through the use of unreasonable force, a basis for an exceptional sentence exists.

In addition, to be an aggravating factor, an abuse of the trust relationship must be used to *facilitate* the commission of the crime. *See State v. Brown*, 55 Wn. App. 738, 780 P.2d 880 (1989), *review denied*, 114 Wn.2d 1014 (1990). Even if we were to determine that Brown abused his position of trust, there is no evidence that Brown used his position as Jesse's father to facilitate the commission of a crime. Brown did not use his position as a way to be alone with the child to commit the assault. Nor did he in some way convince Jesse that because he was the child's father he would not hurt him if Jesse submitted to the punishment. This factor, like that of particular vulnerability, is not supported by the record.

In addition to the trial court's aggravating factors not being supported by the record, the 90–month sentence in this case is clearly excessive. In *State v. Oxborrow*, 106 Wn.2d 525, 723 P.2d 1123 (1986), the Washington Supreme Court stated that the question of whether a sentence is clearly excessive is reviewed under an abuse of discretion standard. *Oxborrow*, at 530. Discretion is abused when it is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 482 P.2d 775 (1971); *Coggle v. Snow*, 56 Wn. App. 499, 507, 784 P.2d 554 (1990).

However, in a concurring opinion in *State v. Creekmore,* 55 Wn. App. 852, 783 P.2d 1068 (1989), *review denied,* 114 Wn.2d 1020 (1990), Judge Forrest took issue with the utilization of the abuse of discretion standard to determine whether a sentence was clearly excessive:

> In my view, it is the responsibility of the appellate court to decide whether a sentence is "clearly excessive" by exercising its own judgment as to the relationship between the reasons given and the duration imposed; not by reference to what some hypothetical reasonable judge would not do. . . .

*Creekmore,* at 877 (Forrest, J., concurring).

The *Creekmore* opinion correctly states that at the time it was filed, no Washington court had reversed an exceptional sentence based on length. However, shortly after that opinion was filed, Division Three filed *State v. Pryor, supra,* in which the trial court had imposed the 10–year maximum sentence in an indecent liberties case. On appeal, the *Pryor* court invalidated some of the aggravating factors relied upon by the trial court, but also held that the trial court abused its discretion in imposing the 10–year sentence, where the standard range would have been 31 to 41 months. *Pryor,* at 123.

In its analysis, the *Pryor* court noted the guidance provided to Minnesota courts by the "doubling rule", which states that cases in which aggravating factors exist but which are not "unusually compelling" may receive a sentence no more than double the standard range. However, the *Pryor* court recognized that the Washington Supreme Court has expressly rejected the doubling rule in *State v. Oxborrow, supra,* and *State v. Armstrong,* 106 Wn.2d 547, 723 P.2d 1111 (1986). *Pryor,* at 121.

The *Pryor* court went on to state that although the standard of review is abuse of discretion, the term of the exceptional sentence must have some basis in the record: "'[T]he length of an exceptional sentence cannot come out of thin air.'" *Pryor,* at 123 (quoting *State v. Wood,* 42 Wn. App. 78, 84, 709 P.2d 1209 (1985), *review denied,* 105

Wn.2d 1010 (1986)). *See also State v. Delarosa–Flores,* 59 Wn. App. 514, 799 P.2d 736 (1990).

Applying this rationale, we hold that the 90–month sentence imposed here is clearly excessive and, therefore, an abuse of discretion. First of all, this assault is not "unusually compelling" when compared to other second degree assaults. The photographs of the child's injuries are not part of the record on review, but medical testimony indicated there was significant bruising of the buttocks. However, the trial testimony indicated that the child was not so severely injured that he was unable to go to school that morning. Although Jesse was examined by medical personnel after CPS was called, there was no testimony that he required any medical treatment.

These facts are particularly important when we note that, utilizing the State's calculated offender score of 6, Brown's 90–month sentence would fall within the standard range for crimes with an offense seriousness level of 9. Assault in the second degree, of which Brown was convicted, has an offense seriousness level of 4. Thus, Brown's sentence places him on the same level as those offenders who have been convicted of robbery in the first degree, manslaughter in the first degree, and controlled substance homicide. His sentence is greater than the standard range for arson in the first degree, rape in the second degree, and vehicular homicide. RCW 9.94A.310–.320. Such a comparison calls into serious question whether the purpose set forth in RCW 9.94A.010(1), to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense . . .", has been carried out here.

Furthermore, it appears that several mitigating factors were present as well and were argued by defense counsel below. Although no one would contend that Brown's use of force in spanking the child was reasonable, it seems clear that there was some provocation for the discipline. Brown had consulted repeatedly with Jesse's teacher and the school principal and had sought resources in the community to help control the child's wayward behavior. Brown

was also concerned that he might lose his job if he missed more work to deal with Jesse's problems. Under the circumstances, it is possible to see that Brown could have lost his temper, and he admitted doing so. Given these circumstances, and given the fact that the trial court's oral remarks indicated that the length of the sentence was based on Jesse's turning 18, we determine that 90 months was clearly excessive.

This case is, therefore, remanded for calculation of the proper offender score and resentencing within the appropriate standard range.

GROSSE, A.C.J., and RINGOLD, J. Pro Tem., concur.

Reconsideration denied February 6, 1991.

Review denied at 116 Wn.2d 1025 (1991).