[No. 20789-7-III.  Division Three.  May 1, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN E. BELL, *Appellant*.

*Gary L. Carpenter*, for appellant.

*Benjamin C. Nichols, Prosecuting Attorney*, and *Curtis L. Liedkie, Deputy*, for respondent.

BROWN, C.J. — Pursuant to a plea agreement, Kevin E. Bell pleaded guilty to first degree kidnapping and second degree assault. The sentencing judge imposed an aggravated exceptional sentence based on his finding the convictions related to an ongoing pattern of domestic violence. On

appeal, Mr. Bell argues the finding is not supported by the record because he asserted real facts objections. We hold Mr. Bell failed to raise a specific objection to any material fact relevant to sentencing. Accordingly, we affirm.

## FACTS

Following altercations with his girl friend on July 17 and 31, 2001, Mr. Bell pleaded guilty under a second amended information to first degree kidnapping and second degree assault according to a plea agreement. In exchange, the State reduced four counts into the two amended counts and withdrew deadly weapon allegations. Under the agreement, the State was to recommend an exceptional sentence; Mr. Bell was free to argue for a low-end standard range sentence.

When entering the plea, in lieu of making an oral or written statement, Mr. Bell marked a check box to indicate, "[i]nstead of making a statement, I agree that the Court may review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for the plea." Clerk's Papers (CP) at 11. Attached to the arresting officer's statement of probable cause was the victim's three and one-half page single spaced statement, where she alleged the abuse started in September 2000.

The victim referred to different types of threatening and abusive behavior over a period of time, specifically mentioning a Christmas death threat incident with a gun and an incident of Mr. Bell cutting her neck with a razor blade in April 2001, before detailing the July events underlying the charges. During the plea hearing, Mr. Bell's counsel stipulated to the admissibility of exhibit P-1, containing the victim's statement, as a basis to support the plea. Following defense counsel's stipulation to exhibit P-1, he remarked "[w]e don't agree with a lot of what is in there, obviously." Report of Proceedings (RP) at 19.

The trial court next allowed sentencing arguments and statements from witnesses, including the victim. There was

no mention of when the abuse started other than a statement from one of the witnesses, Cathy McMasters, that the victim told her in March 2001 Mr. Bell put a razor blade to the victim's neck. The next day, Ms. McMasters observed a razor blade mark on the victim's neck. Mr. Bell did not seek to examine the witnesses. Nor, did he otherwise challenge their statements.

The trial court heard the defense's argument as "some partial possible equivocation" of the alleged factual basis presented at the plea hearing. RP at 51. The trial court then explored a "fallback position" should the plea be deemed defective. RP at 51. Particularly the court asked, "does he concede or hereby enter or ask the court to approve the entry of an *Alford*[1] plea to these two charges; i.e., does he concede that if this matter went to trial that while he doesn't agree with it or believe it or maybe 180 [sic] from the information, [he] understands that the state would be ready, willing and able to prove the contents of P-1 and the victim's statement attached thereto?" RP at 51-52.

Mr. Bell's counsel responded that had the form not contained the check box then "we would have probably put in . . . an *Alford* plea." RP at 52. Further: "He is making this deal as part of a plea bargain and didn't necessarily agree with all the allegations made against him or the severity of them from the state's point of view." RP at 52. The sentencing court thanked Mr. Bell's counsel, and without further comment, granted allocution to Mr. Bell.

The court then imposed an exceptional sentence upward based on its finding "the offenses were part of an ongoing pattern of psychological or physical abuse of the victim manifested by multiple incidents over a prolonged period of time since September, 2000." CP at 25. This appeal followed.

---

[1] *North Carolina v. Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

The issue is whether the sentencing court erred in deciding a factual basis existed to support its findings of domestic violence as part of an ongoing pattern of psychological or physical abuse of the victim for a prolonged period of time, since September 2000, and imposing an aggravated exceptional sentence.

■ To reverse an exceptional sentence, we must find (a) the reasons relied upon by the sentencing judge when imposing the sentence are not supported by the record or do not justify the exceptional sentence, or (b) the sentence imposed was clearly excessive or clearly too lenient. RCW 9.94A.585(4). Under (a), we review the reasons under a clearly erroneous standard; the court reviews justification as a matter of law. Under (b), we review a clearly excessive or clearly too lenient determination using an abuse of discretion standard. *State v. Cardenas*, 129 Wn.2d 1, 5-6, 914 P.2d 57 (1996) (citing *State v. Solberg*, 122 Wn.2d 688, 705, 861 P.2d 460 (1993); *State v. Batista*, 116 Wn.2d 777, 792, 808 P.2d 1141 (1991)).

■ Mr. Bell contends the record does not support the court's findings. Findings of aggravating circumstances will be upheld on appeal if not clearly erroneous, that is, if supported by substantial evidence. *State v. Jeannotte*, 133 Wn.2d 847, 856, 947 P.2d 1192 (1997).

For illustrative purposes, the Sentencing Reform Act of 1981, chapter 9.94A RCW, sets out a nonexclusive list of both mitigating and aggravating circumstances, any one of which may be used to justify the imposition of an exceptional sentence. RCW 9.94A.535. Under RCW 9.94A.535(2)-(h)(i), an aggravated exceptional sentence may be imposed when the current offense involves domestic violence and it was "part of an ongoing pattern of psychological, physical, or sexual abuse of the victim manifested by multiple incidents over a prolonged period of time." "Prolonged" is not further defined.

Plea agreements are contracts where both the defendant and the State are bound. *State v. Sledge*, 133 Wn.2d 828, 838-39 & n.6, 947 P.2d 1199 (1997) (citing *State v. Mollichi*, 132 Wn.2d 80, 90, 936 P.2d 408 (1997)). Mr. Bell signed the plea agreement, permitting the court to consider the officer's statement of probable cause, which included the victim's statement. Mr. Bell argues, however, that under the real facts doctrine, the court improperly considered these documents because his attorney objected at the plea hearing. RCW 9.94A.530(2) provides:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence.

In *State v. Young*, 51 Wn. App. 517, 521, 754 P.2d 147 (1988), Division One of this court reversed and remanded Mr. Young's sentence because the court improperly relied on information that was neither admitted, acknowledged nor proved. *Young* is distinguishable. There, the defendant entered an *Alford* plea and neither Mr. Young nor his attorney signed a plea agreement. Here, Mr. Bell signed the plea agreement, permitting the court to consider the victim's statement. While defense counsel later made a vague statement that Mr. Bell did not agree entirely with exhibit P-1, he made no specific mention as to what Mr. Bell objected to. Later, after sentencing arguments and receiving oral witness statements, the court merely took a fallback position when it invited comments regarding an *Alford* plea. We conclude the equivocal response was insufficient to invoke the *Young* principles.

In any event, whether considered a straight plea or an *Alford* plea, based on this record, Mr. Bell sufficiently acknowledged facts indicating abuse over a prolonged time.

Further, a victim's statement can provide substantial evidence of physical abuse endured over a long period of time. *State v. Osalde,* 109 Wn. App. 94, 96, 34 P.3d 258 (2001). Here, the victim's statement indicated the abuse began in September 2000. Other specific incidents were described by the victim which occurred during Christmas 2000 and the following spring. One witness corroborated the razor blade threats in spring 2001, several months before the July crime events.

■ Mr. Bell contests the court's reliance on witness statements made during the sentencing hearing because the witnesses were not sworn or subject to cross-examination. However, Mr. Bell did not specifically object to these statements, request cross-examination, or alert the court to any specific concerns. Crime victim impact reports and risk assessments must be considered by the court, together with argument of the crime victim at the time of sentencing. RCW 9.94A.500(1). Notably, the rules of evidence do not apply to sentencing proceedings. ER 1101(c)(3). Given this framework, the court did not abuse its discretion by considering the witness statements at the time of sentencing.

■ In any event, the victim's statement contained in exhibit P-1 provided substantial evidence of prolonged abuse. While the court used the date "September 2000" as the time when the abuse began, the record discloses the victim's assertions of continuous physical and emotional abuse and gives specific instances as examples. The other witnesses gave supporting evidence. While the term "prolonged" has no precise definition, the record reflects prolonged precrime abuse in addition to continuing abusive and prohibited contacts from jail after the crime as shown in exhibit P-2. Given these facts, a prolonged time frame is present whether considered from September 2000, Christmas 2000, or spring 2001. The trial court properly considered the postcrime contacts instigated by Mr. Bell from jail as additional psychological abuse.

Moreover, Mr. Bell did not clearly dispute any specific material facts relevant to his sentencing. Just before allo-

cution, the court in concern for the potential for a defective plea asked whether Mr. Bell's counsel would "concede" had the case gone to trial, "the state would be ready, willing and able to prove the contents of P-1 and the victim's statement." RP at 51. Defense counsel's response merely indicated Mr. Bell "didn't necessarily agree with all the allegations made against him or the severity of them from the state's point of view." RP at 52. Mr. Bell did not sufficiently contest any specific material fact, let alone any fact relevant to sentencing. Accordingly, it was proper for the court to receive the concession without the necessity of taking further evidence on the relevant points.

In sum, whether the abuse began in September 2000, Christmas 2000, or spring 2001, the abuse was prolonged. Additionally, according to exhibit P-2, abusive contacts continued from the July crime dates more or less continuously until the January 2002 sentencing, adding to the prolonged time. We conclude the sentencing court correctly found from this record that the offenses were part of an ongoing pattern of abuse over a prolonged period of time. The finding is not clearly erroneous and the exceptional sentence is justified as a matter of law.

Affirmed.

SCHULTHEIS and KURTZ, JJ., concur.

Review denied at 150 Wn.2d 1023 (2003).

