# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51444-3-II |
| | (Consolidated with |
| | No. 50010-8-II) |
| Respondent, | |
| v. | |
| DENISE SONIA P. PANGELINAN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, C.J. — Denise Pangelinan appeals her sentence for vehicular assault aggravated by excessive injuries. Pangelinan argues that (1) the sentencing court erred by relying on facts to which she did not stipulate in imposing an exceptional sentence, (2) her defense counsel was ineffective for failing to object to the sentencing court's use of facts not stipulated to by Pangelinan in imposing an exceptional sentence, (3) the sentencing court erred by imposing a sentence that is not proportionate to the purposes of the Sentencing Reform Act (SRA), (4) the sentencing court erred by ordering that she forfeit all seized property, and (5) the sentencing court erred by imposing a criminal filing fee. In a statement of additional grounds (SAG), Pangelinan also argues that her defense counsel was ineffective.

We hold that (1) the sentencing court did not err in imposing the exceptional sentence, (2) Pangelinan's defense counsel was not ineffective for failing to object to the facts relied on by the

sentencing court in imposing the exceptional sentence, (3) the sentencing court did not impose an exceptional sentence contrary to the purposes of the SRA, (4) the sentencing court erred in ordering the forfeiture of all seized property, and (5) the sentencing court erred by imposing the criminal filing fee. We decline to address the issues raised in the SAG as they rely on matters outside the record or fail to inform us of the nature of the alleged error. Accordingly, we affirm Pangelinan's exceptional sentence, but we remand for the sentencing court to strike the forfeiture provision and the criminal filing fee from Pangelinan's judgment and sentence.

## FACTS

On November 19, 2015, Clancy Lee O'Connor was riding a motorcycle. Pangelinan hit O'Conner with her car while changing lanes. Pangelinan was under the influence of an "intoxicating drug." Clerk's Papers (CP) at 19. O'Connor suffered severe injuries, resulting in the amputation of his right leg and the loss of his eyesight.

On February 26, 2016, in an amended information, the State charged Pangelinan with one count of vehicular assault for operating a vehicle "while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, and caus[ing] substantial bodily harm to another; contrary to Revised Code of Washington 46.61.522(1)." CP at 1. The State also charged her with an aggravating circumstance of excessive injuries: "the victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense, contrary to RCW 9.94A.535(3)(y)." CP at 2.

A.     PANGLELINAN'S PLEA

Pangelinan signed a plea agreement on March 7, 2016. She pleaded guilty to vehicular assault under RCW 46.61.522(1)(b), aggravated by excessive injuries under RCW

No. 51444-3-II (Consolidated with No. 50010-8-II)

9.94A.535(3)(y). Although her standard sentencing range for vehicular assault was 3-9 months, the State and Pangelinan agreed to an exceptional sentence of 24 months.[1]

The plea agreement stated:

The Parties stipulate that justice is best served by the imposition of an exceptional sentence outside the standard range, that they will recommend the following exceptional sentence provisions, and that a factual basis exists for this exceptional sentence, predicated upon *In re Breedlove*, 138 Wn.2d 298 (1999) and *State v. Hilyard*, 63 Wn. App. 413 (1991), *review denied*, 118 Wn.2d 1025 (1992), RCW 9.94A.421(3) and RCW 9.94A.535: EXCEPTIONAL ABOVE THE STANDARD RANGE-24 MONTHS.

CP at 7 (boldface omitted). The plea agreement further stated that "[t]he Defendant understands that if the parties agree to an exceptional sentence, the Defendant is waiving the right to have facts supporting such a sentence decided by a jury." CP at 9. The plea agreement also provided that Pangelinan "agrees to forfeit all seized property referenced in the discovery to the originating law enforcement agency unless otherwise stated." CP at 7. In addition, Pangelinan agreed to the following financial obligations: a $500 victim assessment fee, a $200 filing fee, and a $100 DNA collection fee.

In Section 6(h) of her Statement of Defendant on Plea of Guilty, Pangelinan acknowledged that:

The judge does not have to follow anyone's recommendation as to sentence. The judge must impose a sentence within the standard range unless the judge finds substantial and compelling reasons not to do so. I understand the following regarding exceptional sentences:

. . . .

(iii)   The judge may also impose an exceptional sentence above the standard range if the State and I stipulate that justice is best served by imposition of

---

[1] The maximum sentence for vehicular assault is 120 months.

3

> an exceptional sentence and the judge agrees that an exceptional sentence is consistent with and in furtherance of the interests of justice and the purposes of the Sentencing Reform Act.

CP at 14. Pangelinan also handwrote, "On or about 11/19/15 in Kitsap County I did operate a vehicle while under the influence of an intoxicating drug and caused substantial bodily harm to another. Additionally, the victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." CP at 18-19.

Pangelinan pleaded guilty in court on the same day that she signed the plea agreement and her Statement of Defendant on Plea of Guilty. During the plea hearing, Pangelinan stated that she signed the documents, she went over the documents with her attorney, and she did not have any questions about the plea agreement. She also stated that she understood that the court was not bound by the plea agreement and that she was giving up a number of constitutional rights. The superior court accepted Pangelinan's plea of guilty to vehicular assault under RCW 46.61.522(1)(b), aggravated by excessive injuries under RCW 9.94A.535(3)(y), and set sentencing over to a later date.

B.    SENTENCING HEARING

On March 25, 2016, the court held the sentencing hearing. At the hearing, the State recommended a sentence of 24 months.

In the Victim Impact Statement, O'Connor's wife, writing on behalf of O' Connor, stated that due to his injuries, O'Connor was out of work, and he was the sole provider for their family. "Clancy [sic] whole life was his work and his family. Now he won't be able to work. He will never be able to see his grandchildren grow up." CP at 120.

Several of O'Connor's family members and friends spoke on O'Connor's behalf at the sentencing hearing. These statements emphasized the severity of his injuries, including the amputation of his leg and the loss of his eyesight. The statements also discussed the financial impact on his family due to the medical bills and O'Connor's inability to perform his job. They emphasized that he will never be able to see his children and grandchildren again. The statements also emphasized the fact that Pangelinan made a choice to drive intoxicated: "[t]his was not an unfortunate accident." Verified Report of Proceedings (VRP) (Mar. 25, 2016) at 19.

The court sentenced Pangelinan to 96 months in custody and imposed a $500 victim assessment fee, a $200 filing fee, and a $100 DNA collection fee. The court also ordered Pangelinan to "[f]orfeit all seized property referenced in the discovery to the originating law enforcement agency." CP at 27-28.

In imposing its sentence, the court commented that the aftermath of the accident was "devastating." VRP (Mar. 25, 2016) at 53. It stated, "I have to look at the facts, and the facts have been clearly laid out to me about the aftermath of this incident, and not only in the near future but years from now." VRP (Mar. 25, 2016) at 54. The court also stated it was not imposing the maximum 120 months of prison only because Pangelinan did not have a criminal history.

C.    WRITTEN FINDINGS OF FACT AND CONCLUSIONS OF LAW

On February 10, 2017, the sentencing court entered its written findings of fact and conclusions of law for the exceptional sentence. These stated in relevant part:

> Finding of Fact No. 6:
>     The Court advised the Defendant that the Court could impose a sentence different than what was being recommended in the Agreement. She was also advised that the Court was not bound by the Agreement. The Defendant stated she understood that.

Finding of Fact No. 7:

 The Defendant acknowledged she went over the Statement with her attorney. She advised she did not have any questions about the Statement. She stated she understood that she was giving up a number of important constitutional rights by pleading guilty.

 . . . .

Finding of Fact No. 10:

 At the sentencing hearing, the deputy prosecutor provided a very brief statement of what had occurred and the injuries sustained by the victim. As a result of the Defendant driving while impaired the victim lost a leg (it was amputated during his stay in the hospital). The victim lost his eyesight and is now permanently blind.

 . . . .

Finding of Fact No. 13:

 Following those presentations, the Court advised the Defendant that she had a right to make a statement before sentence would be imposed. The Defendant was also advised that she was not obligated to make a statement and that if she chose not to make a statement her silence could not be used against her in any way. Having said that, the Court told the Defendant that if there was something she wanted say about the situation the Court would listen. The Defendant did make a statement and she was sincerely remorseful for the damage she had caused.

Finding of Fact No. 14

 The Court commented on the severe impact her crime had on the victim and in particular, the fact that the victim was now permanently blind. The Court imposed an exceptional sentence of 96 months.

 . . . .

Conclusion of Law No. 3:

 RCW 9.94A.535[(3)](y) states an exceptional sentence may be appropriate when "the victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." The Defendant agreed that the facts and circumstances of her offense justifies a departure from the sentencing guidelines and constitute a basis to impose a sentence above the standard range.

Conclusion of Law No. 4:

6

> "[T]he effects [of an offense] on the victim may be used to justify an exceptional sentence if they are significantly more serious than the usual case." *State v. Tunnell*, 51 Wn. App. 274, 279.

> Conclusion of Law No. 5:
> As a result of Defendant's crime, the victim suffered both the amputation of his leg and is now permanently blind. The victim's injuries far exceed substantial bodily harm. An exceptional sentence of 96 months is an appropriate reflection of the damage caused by the Defendant's crime.

CP at 105-08 (boldface omitted) (alterations in original). The court also entered an order of indigency, allowing Pangelinan to appeal at public expense.

Pangelinan appeals her sentence.

## ANALYSIS

A. EXCEPTIONAL SENTENCE

1. Stipulated Facts

Pangelinan argues that the sentencing court abused its discretion by relying on facts to which she did not stipulate when imposing the exceptional sentence. Specifically, Pangelinan argues that the sentencing court used facts it did not find beyond a reasonable doubt. We disagree.

By statute, a Washington court may impose an exceptional sentence outside the standard range if it concludes that "there are substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.535. RCW 9.94A.535(3)(y) states that when "[t]he victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense" a sentence above the standard range can be imposed. Additionally, RCW 9.94A.535(2)[2] states:

---

[2] In *Blakely v. Washington*, the United States Supreme Court acknowledged that a jury need not find facts supporting an exceptional sentence when a defendant pleads guilty and stipulates to the relevant facts:

The trial court may impose an aggravated exceptional sentence without a finding of fact by a jury under the following circumstances:

(a) The defendant and the state both stipulate that justice is best served by the imposition of an exceptional sentence outside the standard range, and the court finds the exceptional sentence to be consistent with and in furtherance of the interests of justice and the purposes of the sentencing reform act.

And RCW 9.94A.500(1) states:

Before imposing a sentence upon a defendant, the court shall conduct a sentencing hearing.

. . . .

The court shall consider the risk assessment report and presentence reports, if any, including any victim impact statement and criminal history, and allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to be imposed.

Here, the plea agreement that Pangelinan signed stated, "The Parties stipulate that justice is best served by the imposition of an exceptional sentence outside the standard range, that they will recommend the following exceptional sentence provisions, and that a factual basis exists for this exceptional sentence." CP at 7. The Statement of Defendant on Plea of Guilty stated,

The judge may also impose an exceptional sentence above the standard range if the State and I stipulate that justice is best served by imposition of an exceptional sentence and the judge agrees that an exceptional sentence is consistent with and in furtherance of the interests of justice and the purposes of the Sentencing Reform Act.

---

When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. If appropriate waivers are procured, States may continue to offer judicial factfinding as a matter of course to all defendants who plead guilty.

542 U.S. 296, 310, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (citations omitted); *State v. Suleiman*, 158 Wn.2d 280, 289, 143 P.3d 795 (2006).

8

CP at 14. And Pangelinan wrote in her Statement of Defendant on Plea of Guilty, "On or about 11/19/15 in Kitsap County I did operate a vehicle while under the influence of an intoxicating drug and caused substantial bodily harm to another. Additionally, the victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." CP at 18-19. Because Pangelinan stipulated to the factual basis for the exceptional sentence and the sentencing court agreed to the imposition of an exceptional sentence, those facts did not need to be determined by a jury beyond a reasonable doubt. *Blakely v. Washington*, 542 U.S. 296, 310, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); *State v. Suleiman*, 158 Wn.2d 280, 289, 143 P.3d 795 (2006); RCW 9.94A.535(2).

As to the length of the sentence, the sentencing court has "'all but unbridled discretion'" in determining the length of an exceptional sentence. *State v. France*, 176 Wn. App. 463, 470, 308 P.3d 812 (2013) (internal quotations omitted) (quoting *State v. Halsey*, 140 Wn. App. 313, 325, 165 P.3d 409 (2007)), *review denied*, 179, Wn.2d 1015 (2014). However, the term of an exceptional sentence must have some basis in the record: "The length of an exceptional sentence cannot come out of thin air." *State v. Brown*, 60 Wn. App. 60, 77, 802 P.2d 803 (1990). When a sentencing court does not base its sentence on improper reasons, this court will find a sentence excessive only if its length, in light of the record, "'shocks the conscience.'" *State v. Vaughn,* 83 Wn. App. 669, 681, 924 P.2d 27 (1996) (internal quotation marks omitted) (*quoting State v. Ritchie,* 126 Wn.2d 388, 396, 894 P.2d 1308 (1995)), *review denied,* 131 Wn.2d 1018, 936 P.2d 417 (1997).

We review the length of a sentence for an abuse of discretion. *Ritchie*, 126 Wn.2d at 392. A "clearly excessive" sentence is one that is clearly unreasonable, "'*i.e.,* exercised on untenable

grounds or for untenable reasons, or an action that no reasonable person would have taken.'" *Id.* at 393 (quoting *State v. Oxborrow,* 106 Wn.2d 525, 531, 723 P.2d 1123 (1986)).

Here, as discussed above, the sentencing court's exceptional sentence did not "'come out of thin air.'" *Brown*, 60 Wn. App. at 77 (internal quotations omitted) (quoting *State v. Pryor*, 56 Wn.2d 107, 123, 782 P.2d 1076 (1989)). Rather, the record shows that the sentence was based on proper reasons. Pangelinan's plea agreement stated that "justice is best served by imposition of an exceptional sentence and the judge agrees that an exceptional sentence is consistent with and in furtherance of the interests of justice and the purposes of the Sentencing Reform Act." CP at 14. And Pangelinan admitted that "the victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense." CP at 19. Because the sentencing court based its exceptional sentence on Pangelinan's admissions in the record, the sentencing court did not abuse its discretion in imposing an exceptional sentence of 96 months in custody.

Pangelinan also argues that the sentencing court improperly relied on the fact that O'Connor lost his leg and eyesight as a result of her vehicular assault. But the fact that O'Connor's loss of his leg and eyesight is the basis upon which the parties stipulated to the fact that "the victim's injuries substantially exceed the level of bodily harm necessary to satisfy the elements of the offense" cannot be ignored. CP at 19. Therefore, we hold that Pangelinan's challenge fails.

At the sentencing hearing, the court reviewed the victim impact statement, which included a description of O'Connor's injuries and the impact those injuries have had on O'Connor and his family. And the State informed the court of O'Connor's injuries. In addition, the court heard from O'Connor and his family and friends. The statements by O'Connor and his family and friends emphasized the severity of his injuries, including the amputation of his leg and the loss of his

eyesight, and the financial and emotional impact of those injuries. The court's consideration of the extent of O'Connor's injuries was not improper. *See* 9.94A.500(1); *State v. Bell*, 116 Wn. App. 678, 684, 67 P.3d 527 (2003) (stating, "Crime victim impact reports and risk assessments must be considered by the court, together with argument of the crime victim at the time of sentencing."), *review denied*, 150 Wn.2d 1023 (2003). And the court's findings and conclusions show that the court relied only on O'Connor's leg amputation and permanent blindness in imposing the exceptional sentence.

Because a sentencing court can rely on victim impact statements, the court's consideration of the victim impact statements in determining the length of Pangelinan's exceptional sentence was not based on untenable grounds or untenable reasons. Therefore, the sentencing court also did not abuse its discretion in determining the length of Pangelinan's exceptional sentence.

2.      Ineffective Assistance of Counsel

Pangelinan argues that her defense counsel was ineffective because he failed to object the sentencing court's use of facts not stipulated to by Pangelinan in imposing an exceptional sentence six years longer than the agreed sentence. We disagree.

We review ineffective assistance of counsel claims de novo. *State v. Lopez*, 190 Wn.2d 104, 115, 410 P.3d 1117 (2018). In reviewing ineffective assistance of counsel claims, we begin with a strong presumption of counsel's effectiveness. *State v. McFarland,* 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). A defendant claiming ineffective assistance of counsel has the burden to establish that (1) counsel's performance was deficient and (2) the performance prejudiced the defendant's case. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. *Id.*

11

at 700. If the defendant bases her ineffective assistance of counsel claim on defense counsel's failure to object, the defendant must show that the objection would have succeeded. *State v. Gerdts,* 136 Wn. App. 720, 727, 150 P.3d 627 (2007).

Here, as shown above, the sentencing court did not rely on improper facts in imposing an exceptional sentence. Because any objection defense counsel may have made to the sentencing court's use of victim impact facts would not have succeeded, defense counsel's performance was not deficient. Pangelinan has failed to meet her burden to show ineffective assistance of counsel because she cannot show that defense counsel's performance was deficient. Therefore, Pangelinan's ineffective assistance of counsel claim fails.

3.      Proportionate Sentence

Pangelinan argues that the length of her sentence is not proportionate to the purposes of the Sentencing Reform Act. We disagree.

Our Supreme Court has rejected a proportionality review for exceptional sentences. *Ritchie*, 126 Wn.2d at 396-97. With regard to proportionality with the purposes of the Sentencing Reform Act, our Supreme Court has stated:

> [T]he general declaration of purpose in RCW 9.94A.010 does not overcome the controlling language of the substantive provisions of the SRA. When the Legislature intended consideration of the general declaration of purpose in the application of a particular procedure, it so provided. Only in RCW 9.94A.120(2) did it require specific consideration of the purpose of the SRA. This section relates only to the decision to *impose* an exceptional sentence, not to the *length* thereof. This explicit direction demonstrates how the substantive provisions are to satisfy the general declaration of purpose.

12

*Ritchie*, 126 Wn.2d at 396. Once the Supreme Court has decided an issue of state law, that interpretation is binding until it is overruled. *See In re Pers. Restraint of Chapelle*, 153 Wn.2d 1, 5, 100 P.3d 805 (2004).

Here, the length of the sentence is at issue, not the imposition of the exceptional sentence. Under stare decisis, we do not review proportionality for the length of exceptional sentences. Therefore, the sentencing court did not commit any error in determining Pangelinan's sentence.

B.     FORFEITURE

Pangelinan argues that the sentencing court acted without authority in ordering the forfeiture of all property referenced in the discovery as a condition of Pangelinan's sentence. Specifically, Pangelinan argues that the sentencing court did not cite any statutory authority in imposing this condition, so the forfeiture order should be vacated. The State concedes that that the forfeiture provision of the judgment and sentence should be stricken.

Sentencing courts do no not have inherent power to order property forfeitures in connection with a criminal conviction. *State v. Alaway*, 64 Wn. App. 796, 801, 828 P.2d 591, *review denied*, 119 Wn.2d 1016 (1992). The authority to order property forfeitures in connection with a criminal conviction is purely statutory. *State v. Roberts*, 185 Wn. App. 94, 96, 339 P.3d 995 (2014). "We review de novo whether the trial court had statutory authority to impose a sentencing condition." *Id.*

Here, both the State and the sentencing court failed to cite any authority for ordering the forfeiture. Therefore, we accept the State's concession and remand for the sentencing court to strike the forfeiture provision in Pangelinan's judgment and sentence.

C.      LFO – CRIMINAL FILING FEE

Pangelinan argues that the criminal filing fee should be stricken because Pangelinan is indigent. The State concedes that the imposed criminal filing fee should be stricken.

The 2018 legislative amendments to the LFO statutes prohibit sentencing courts from imposing a criminal filing fee on indigent defendants. RCW 36.18.020(2)(h); *State v. Ramirez*, 191 Wn.2d 732, 746-47, 426 P.3d 714 (2018). Our Supreme Court has held that the amendments apply prospectively, and are applicable to cases pending on direct review and not final when the amendment was enacted. *Id*.

Here, the sentencing court found Pangelinan indigent. Therefore, we accept the State's concession and remand for the sentencing court to strike the criminal filing fee from Pangelinan's judgment and sentence.

STATEMENT OF ADDITIONAL GROUNDS

A.      INEFFECTIVE ASSISTANCE OF COUNSEL

Pangelinan argues that her defense counsel "was not of any help to my defense. I wanted to take it to trial when he informed me he had no time. I didn't know nor was I familiar with the law." SAG at 2.

Here, there is no record to support Pangelinan's contention that defense counsel did not have time to try Pangelinan's case. We do not address matters outside of the record. *McFarland*, 127 Wn.2d at 335. Thus, we do not review this issue.

B.      DEFENSE INVESTIGATOR

Pangelinan states that "[t]wo hours after signing a plea, an investigator visits me explaining the re-enactment videos." SAG at 2.

RAP 10.10(c) states, "the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." Here, Pangelinan's bald statement that an investigator visited here two hours after she signed her plea to show her re-enactment videos fails to inform us of the nature of the alleged errors. Therefore, we decline to review this issue.[3]

We affirm Pangelinan's exceptional sentence, but remand for the sentencing court to strike the forfeiture provision and the criminal filing fee from Pangelinan's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                                 , C.J.

                                      Lee, C.J.

We concur:

Worswick, J.

Melnick, J.

---

[3] We also note that the issue of reenactment videos arose in Pangelinan's motion to withdraw her guilty plea. RAP 10.10(a) states, "In a criminal case on direct appeal, the defendant may file a pro se statement of additional grounds for review to identify and discuss those matters related to the decision under review *that* the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel." Here, the decision under review on appeal is the sentencing, not the motion to withdraw the guilty plea.