[No. 13249-4-II. Division Two. March 12, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL P. HUFF, *Appellant*.

*Robert A. Lewis* and *Knapp, O'Dell, Lewis & Hagensen,* for appellant (appointed counsel for appeal).

*Robert K. Leick, Prosecuting Attorney,* and *Grant E. Hansen, Deputy,* for respondent.

MORGAN, J. — Daniel Huff appeals his conviction for possession of a controlled substance. We affirm.

On May 13, 1989, Huff was driving a late 1960's Lincoln Continental eastbound on Highway 14 in Skamania County. Naomi Morley was a passenger riding in the right front seat.

Deputy Cox of the Skamania County Sheriff's Office was on patrol. He saw the Lincoln weaving and suspected that the driver was intoxicated or having mechanical problems. He pulled in behind and turned on his emergency lights.

Huff did not stop. He continued east for another one-half mile, then turned south onto the Bridge of the Gods, a narrow 2-lane bridge spanning the Columbia River.

While following Huff with his lights on, Cox observed Morley looking back at him and making what appeared to be furtive movements. Cox then turned on his siren, and Huff stopped about 100 yards onto the bridge.

After stopping behind the Lincoln, Cox approached it. He immediately smelled the odor of methamphetamine. However, he could not tell whether it was coming from Huff or from inside the car.

Cox asked Huff for his driver's license. Huff said he did not have one, although he had previously had one in California. When asked about the car, Huff stated that it belonged to the friend of a friend. Eventually, he produced a registration. Cox ran a computer check and determined that the car had not been reported stolen. He then asked the sheriff's office to contact the owner, but apparently the owner could not be located.

Cox also discovered that Huff had an outstanding warrant for probation violation. Thus, he arrested Huff and placed him in the patrol car. Huff asked if Morley could take charge of the Lincoln.

Morley was still sitting in the front seat of the Lincoln. To explore whether the car should be released to her, Cox went back to the Lincoln and again smelled methamphetamine. He could not tell whether it was coming from Morley or from somewhere else inside the car.

Cox asked Morley for her driver's license, but she did not produce one. Instead, she gave a false name and showed him a fictitious birth certificate and social security card. Remembering her from prior contacts, Cox realized that she was lying and placed her under arrest for obstructing a public servant. He also removed her from the Lincoln.

Cox then asked Huff for permission to search the Lincoln. Huff refused, but Morley asked Cox to retrieve her purse from the front seat. As Cox was getting the purse, he once again smelled methamphetamine, and this time he became convinced that the odor was emanating from inside the car.

At this point, Cox decided to obtain a search warrant for the car. Thus, he impounded it and had it towed to the police station, where it was held pending preparation of the documents needed for a search warrant. The warrant was issued as requested, and the ensuing search revealed a pink purse containing methamphetamine. The pink purse was hidden in a pile of laundry in the backseat, and earlier in the chain of events, Morley had told Cox that the laundry belonged to her. The pink purse was a different purse from the one that Cox had retrieved earlier at Morley's request.

Huff was charged with possession of a controlled substance. Before trial, he made a motion to suppress the pink purse and its contents, but the motion was denied. At trial, he made motions to dismiss for insufficient evidence and to give certain proposed jury instructions, but those motions were also denied. He was convicted and sentenced to 80 days in jail and 12 months' community supervision.

On appeal, Huff argues that the trial court erred by denying each of his motions. We discuss the motion to suppress in sections I and II, and the other motions in section III.

I

Huff's first argument is that the drugs are the fruit of an illegal arrest. He does not claim that the affidavit supporting the search warrant failed to show probable cause or that the search warrant was facially defective. However, he argues that Cox would not have decided to obtain the search warrant but for confirming that the odor of methamphetamine was emanating from inside the car as well as from Huff and Morley; that Cox would not have confirmed that the odor of methamphetamine was emanating from the car but for retrieving the first purse from the front seat at Morley's request; that Morley would not have made her request but for being arrested; and that Morley's arrest for obstructing a public servant was illegal because the relevant portions of the obstructing statute, RCW 9A.76.020(1) and (2), were held unconstitutional in *State v. White*, 97 Wn.2d 92, 640 P.2d 1061 (1982).

The State expressly concedes that Huff has standing to challenge the validity of Morley's arrest. For that reason only, we consider Huff's argument.

The argument fails because its premise is faulty. Morley's arrest was lawful.

■■ The validity of an arrest is determined by objective facts and circumstances. *Beck v. Ohio*, 379 U.S. 89, 96, 13 L. Ed. 2d 142, 147, 85 S. Ct. 223, 228 (1964); *Ricehill v. Brewer*, 459 F.2d 537 (8th Cir. 1972); *Klingler v. United States*, 409 F.2d 299 (8th Cir.), *cert. denied*, 396 U.S. 859 (1969); *State v. Vanzant*, 14 Wn. App. 679, 681, 544 P.2d 786, 788 (1975); Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. Puget Sound L. Rev. 411, § 2.2(a), at 450 (1987-1988). An arrest not supported by probable cause is not made lawful by an officer's subjective belief that an offense has been committed. *Carroll v. United States*, 267 U.S. 132, 161-62, 69 L. Ed. 543, 45 S. Ct. 280, 288 (1925);

*Director General of R.R.'s v. Kastenbaum*, 263 U.S. 25, 28, 68 L. Ed. 146, 44 S. Ct. 52, 53 (1923). By the same token, an arrest supported by probable cause is not made unlawful by an officer's subjective reliance on, or verbal announcement of, an offense different from the one for which probable cause exists.[1] *United States v. Saunders*, 476 F.2d 5 (5th Cir. 1973); *United States v. Bowers*, 458 F.2d 1045 (5th Cir.), *cert. denied*, 409 U.S. 868 (1972); *United States v. Brookins*, 434 F.2d 41 (5th Cir. 1970), *cert. denied*, 401 U.S. 912, 27 L. Ed. 2d 811, 91 S. Ct. 880 (1971); *Klingler v. United States*, 409 F.2d 299 (8th Cir.), *cert. denied*, 396 U.S. 859 (1969); *Ricehill v. Brewer, supra*; *State v. Vangen*, 72 Wn.2d 548, 433 P.2d 691 (1967); *Seattle v. Cadigin*, 55 Wn. App. 30, 776 P.2d 727, *review denied*, 113 Wn.2d 1025 (1989); *State v. Stebbins*, 47 Wn. App. 482, 735 P.2d 1353, *review denied*, 108 Wn.2d 1026 (1987). "The law cannot expect a patrolman, unschooled in the technicalities of criminal and constitutional law . . . to always be able to immediately state with particularity the exact grounds on which he is exercising his authority." *McNeely v. United States*, 353 F.2d 913, 918 (8th Cir. 1965).

 Under both the federal and state constitutions, probable cause is the objective standard by which the reasonableness of an arrest is measured. *State v. Bonds*, 98 Wn.2d 1, 653 P.2d 1024 (1982), *cert. denied*, 464 U.S. 831 (1983); *State v. Stebbins, supra*; *Dunaway v. New York*, 442 U.S. 200, 208, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (1979). Probable cause for a warrantless arrest exists when facts and circumstances within the arresting officer's knowledge are sufficient to cause a person of reasonable caution to believe that a crime has been committed. *State v. Fricks*, 91

---

[1]Some older Washington cases suggest that an officer must have a subjective good faith belief that the suspect has committed a crime as well as enunciating the objective test for probable cause. *State v. Cottrell*, 86 Wn.2d 130, 542 P.2d 771 (1975); *State v. Todd*, 78 Wn.2d 362, 474 P.2d 542 (1970); *State v. Palmer*, 73 Wn.2d 462, 438 P.2d 876, *cert. denied*, 393 U.S. 954 (1968); *State v. Easton*, 69 Wn.2d 965, 422 P.2d 7 (1966); *State v. Miller*, 151 Wash. 114, 275 P. 75 (1924). However, these cases do not consider the situation in which an officer has a subjective good faith belief that a crime has been committed but has the wrong crime in mind.

Wn.2d 391, 588 P.2d 1328 (1979); *State v. Gluck*, 83 Wn.2d 424, 426-27, 518 P.2d 703 (1974); *Stebbins*, 47 Wn. App. at 484. More specifically, probable cause to arrest the occupants of a car for possession of a controlled substance exists when a trained officer detects that the odor of a controlled substance is emanating from a vehicle.[2] *State v. Hammond*, 24 Wn. App. 596, 600, 603 P.2d 377 (1979) (passenger); *State v. Compton*, 13 Wn. App. 863, 864-65, 538 P.2d 861 (1975) (driver); 2 W. LaFave, *Search and Seizure* § 3.6(b), at 36-38 (2d ed. 1987); *see also State v. Ramirez*, 49 Wn. App. 814, 819, 746 P.2d 344 (1987); *Johnson v. United States*, 333 U.S. 10, 13, 92 L. Ed. 436, 68 S. Ct. 367 (1948). Other facts supportive of probable cause include furtive movements and lying to the police, both of which evidence consciousness of guilt. *Sibron v. New York*, 392 U.S. 40, 66, 20 L. Ed. 2d 917, 88 S. Ct. 1889, 1904 (1968) (deliberate furtive gestures at the approach of the police are strong indicia of guilty mens rea) (citing *Brinegar v. United States*, 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949)); *State v. Goodman*, 42 Wn. App. 331, 711 P.2d 1057 (1985), (improbable explanation and false answers may be considered in probable cause determination), *review denied*, 105 Wn.2d 1012 (1986); *State v. Bryan*, 40 Wn. App. 366, 698 P.2d 1084 (1985) (false answers, indicating guilty mens rea combined with circumstantial evidence); *State v. Sinclair*, 11 Wn. App. 523, 531, 523 P.2d 1209 (1974) (false answers); *State v. Haverty*, 3 Wn. App. 495, 475 P.2d 887 (1970) (improbable explanation of possession of stolen property); *see also United States v. Ortiz*, 422 U.S. 891, 897, 45 L. Ed. 2d 623, 629, 95 S. Ct. 2585 (1975) (dicta) (officer may consider suspect's response to questioning).

[2]A few courts have distinguished between whether the smell emanates from the suspect's person or from the car, holding that probable cause to arrest exists only when the defendant herself smells of narcotics. *See* 2 W. LaFave, *Search and Seizure* § 3.6(b) (2d ed. 1987) (collecting cases). However, this is not the rule in Washington. *State v. Ramirez*, 49 Wn. App. 814, 819, 746 P.2d 344 (1987); *State v. Hammond*, 24 Wn. App. 596, 600, 603 P.2d 377 (1979); *State v. Compton*, 13 Wn. App. 863, 864-65, 538 P.2d 861 (1975).

In this case, Cox had objectively sufficient probable cause to arrest Morley for possession of a controlled substance. As he was attempting to stop the car, he saw Morley look back at him and make furtive gestures. When he asked her for her driver's license, he smelled methamphetamine coming from her, the car, or both. He testified that the smell is quite distinctive, "like a cross between cat urine and a chemical smell", that he had been trained to recognize it, and that he had come in contact with it 50 to 75 times in the course of his duties. Last but not least, Morley lied to him about her identity.

In light of the foregoing, Cox's subjective intent to arrest Morley for obstructing a public servant is immaterial. Assuming without holding that he could not lawfully have arrested her on that basis, the arrest here was nevertheless valid because he had objectively sufficient probable cause to believe that she was in possession of a controlled substance.

## II

Huff's second argument is that the drugs are the fruit of an illegal seizure. Specifically, he argues that Cox unconstitutionally seized and held the car while he obtained the search warrant, and that the drugs would not have been found but for that seizure. As before, he does not claim that the affidavit supporting the search warrant failed to show probable cause or that the search warrant was facially defective. Nor does he claim, on grounds not already dealt with,[3] that Cox illegally intruded into the car before obtaining the search warrant. His argument is that Cox unconstitutionally interfered with his possessory rights, as opposed to his privacy rights. See *State v. Ng*, 104 Wn.2d 763, 770-71, 713 P.2d 63 (1985) (quoting 2 W. LaFave, *Search and Seizure* § 6.5, at 185 (Supp. 1985)).

Before Cox seized the car, he had probable cause to search it. The odor of methamphetamine, Huff's apparent

---

[3]Huff claims that Cox illegally intruded into the car when he retrieved Morley's purse because she would not have asked him to retrieve it but for her arrest which he asserts was illegal. Because we hold that Morley was not illegally arrested, this claim fails.

reluctance to stop, Morley's furtive gestures and Morley's lies were facts and circumstances sufficient to cause a person of reasonable caution to believe that the car contained contraband.

Based on the probable cause that he had, Cox could have immediately searched the Lincoln without a warrant. *See e.g., Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *State v. Glasper,* 84 Wn.2d 17, 523 P.2d 937 (1974); *State v. Parker,* 79 Wn.2d 326, 485 P.2d 60 (1971). If he had done so, Huff's privacy rights would have been invaded without warrant. Moreover, the occupants of the car would have been dispossessed during the search, which is equivalent to saying that Huff's possessory rights would have been interfered with for the period of time needed to conduct the search.

Instead of searching immediately, Cox chose to seek a warrant, a course of action that the law prefers. *United States v. Rubies,* 612 F.2d 397, 404 n.7 (9th Cir. 1979), *cert. denied,* 446 U.S. 940 (1980); *United States v. Doty,* 714 F.2d 761, 763 (8th Cir. 1983); *see also Johnson v. United States,* 333 U.S. 10, 14, 92 L. Ed. 436, 68 S. Ct. 367, 369 (1948). So that evidence would not be taken or destroyed, he seized and held the car not only for the time needed to search, but also for the time needed to obtain a warrant. Thus, Huff's privacy rights were not invaded, but his possessory rights were interfered with for a longer period of time than if Cox had searched immediately without a warrant. It is the latter fact that forms the crux of Huff's present complaint.

■■ The United States Supreme Court has upheld the warrantless seizure of various kinds of property for the time reasonably necessary to obtain a warrant, provided that the police have probable cause to search. *Arkansas v. Sanders,* 422 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979) (luggage); *United States v. Van Leeuwen,* 397 U.S. 249, 25 L. Ed. 2d 282, 90 S. Ct. 1029 (1970) (packages in the mail); *Segura v. United States,* 468 U.S. 796, 82 L. Ed. 2d 599, 104 S. Ct. 3380 (1984) (plurality opinion) (an apartment may be secured from the inside even absent exigent circumstances);

*Segura v. United States, supra* at 824 n.15 (Stevens, J., dissenting) (apartment may be secured from the outside, even absent exigent circumstances). With specific regard to cars, it has held that when an officer develops probable cause to believe that a car which he or she has lawfully stopped contains contraband, it is reasonable under the Fourth Amendment to seize and hold the car for "whatever period is necessary" in order to obtain a search warrant. *Chambers v. Maroney*, 399 U.S. at 51; *Texas v. White*, 423 U.S. 67, 46 L. Ed. 2d 209, 96 S. Ct. 304 (1975) (per curiam); *Michigan v. Thomas*, 458 U.S. 259, 73 L. Ed. 2d 750, 102 S. Ct. 3079 (1982); *United States v. Kimberlin*, 805 F.2d 210 (7th Cir. 1986), *cert. denied*, 483 U.S. 1023 (1987); *see also Cardwell v. Lewis*, 417 U.S. 583, 595, 41 L. Ed. 2d 325, 94 S. Ct. 2464 (1974).

The Washington Supreme Court has held that the police, if they have probable cause to search, may seize a residence for the time reasonably needed to obtain a search warrant. *State v. Terrovona*, 105 Wn.2d 632, 645, 716 P.2d 295 (1986); *State v. Ng*, 104 Wn.2d at 770-71. We are unaware of any Washington case that extends this principle to cars,[4] but we now do so. In our view, the possessory rights to a car are not greater than those to a residence. Thus, if the police are

---

[4]Several cases illustrate the propriety of warrantless seizures in other situations. In *State v. Glasper*, 84 Wn.2d 17, 523 P.2d 937 (1974), the court upheld the warrantless seizure of a car (84 Wn.2d at 22) not for the time needed to obtain a warrant, but for the time needed to conduct further investigation. In that case, there was "reasonable cause to believe that the unpadded and unsecured television set" in the partially open trunk of the car was stolen property (84 Wn.2d at 21), and "rather than seize the television set in plain view in the trunk of the car, the police officers took the more cautious route of impounding the vehicle and waiting to confirm that the television set had in fact been stolen." 84 Wn.2d at 22. In *State v. Terrovona*, 105 Wn.2d at 647-48, the court upheld the warrantless seizure of a car not just for the time needed to obtain a warrant, but as evidence pending trial. In that case, there was probable cause to believe that the car itself was evidence. 105 Wn.2d at 648. In *Lowery v. Nelson*, 43 Wn. App. 747, 719 P.2d 594, *review denied*, 106 Wn.2d 1013 (1986), *appeal dismissed*, 479 U.S. 1024 (1987), the court upheld the warrantless seizure of a car for purposes of forfeiture, where the car had been used to illegally transport drugs. *See also GM Leasing Corp. v. United States*, 429 U.S. 338, 352, 50 L. Ed. 2d 530, 543, 97 S. Ct. 619, 628 (1977) (warrantless seizure of vehicles by IRS).

authorized to interfere with possession of a residence for the time reasonably needed to get a warrant, they are also authorized to interfere with possession of a car for the same period of time.

To hold otherwise would discourage and perhaps eliminate the use of warrants for cars. If an officer wants to obtain a warrant but cannot hold a car for the period of time needed to obtain the warrant, one alternative is to release the car to its occupants or their friends; a second is to lock it up and leave it on the street; and a third is to search it immediately without warrant on the ground that its mobility creates exigent circumstances. *Chambers v. Maroney, supra; State v. Glasper, supra; State v. Parker, supra.* The first alternative entails a risk that the occupants or their friends will take or destroy the evidence, and the second entails a risk that thieves or vandals will do the same. Thus, even the officer who would prefer to obtain a warrant will invariably adopt the third, and the practice of obtaining a warrant before searching a car, to the extent that it now exists, will be virtually eliminated.

These same concerns can be articulated using the language of constitutional reasonableness. The purpose of the fourth amendment to the United States Constitution and Const. art. 1, § 7 is to prohibit unreasonable searches and seizures, *Cady v. Dombrowski,* 413 U.S. 433, 439, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973); *State v. McKinnon,* 88 Wn.2d 75, 78, 558 P.2d 781 (1977), and it is constitutionally reasonable to allow a slightly longer infringement on possessory rights in order to encourage the heightened protection of privacy rights that results from obtaining a warrant before a search is conducted.

Huff contends that our conclusion is contrary to *State v. Williams,* 102 Wn.2d 733, 689 P.2d 1065 (1984), *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980), and *State v. Houser,* 95 Wn.2d 143, 622 P.2d 1218 (1980). In those cases, the Supreme Court said:

> A motor vehicle may be lawfully impounded in certain specific circumstances: (1) as evidence of a crime, if the

officer has probable cause to believe that it was stolen or used in the commission of a felony; (2) as part of the "community caretaking function," if the removal of the vehicle is necessary (in that it . . . poses a threat to public safety and convenience, or is itself threatened by vandalism or theft of its contents), *and* neither the defendant nor his spouse or friends are available to move the vehicle; and (3) as part of the police function of enforcing traffic regulations, if the driver has committed one of the traffic offenses for which the legislature has specifically authorized impoundment.

*Williams*, 102 Wn.2d at 742-43; *Simpson*, 95 Wn.2d at 189; *Houser*, 95 Wn.2d at 149-50. Huff argues that the quoted language is exclusive — *i.e.*, that it prohibits the warrantless seizure of a car in any circumstance other than the ones set forth.[5]

The contention fails for two reasons. First, in *Houser* and *Simpson*, the Supreme Court expressly held that the police did not have probable cause to search, *Houser*, 95 Wn.2d at 150; *Simpson*, 95 Wn.2d at 189, and in *Williams*, the court did not reach the question of whether the police had probable cause to search. *Williams*, 102 Wn.2d at 742-43. In none of these cases was there a finding of probable cause, and without such a finding the Supreme Court had no occasion to consider whether probable cause would justify the warrantless seizure of a car for the time reasonably needed to obtain a warrant.

Second, in *Houser*, *Simpson* and *Williams*, the Supreme Court did not intend to rule on situations not then before the court. The constitutionality of a seizure depends on its reasonableness, *e.g.*, *United States v. Chadwick*, 433 U.S. 1, 9, 53 L. Ed. 2d 538, 97 S. Ct. 2476, 2482 (1977); *Cooper v. California*, 386 U.S. 58, 17 L. Ed. 2d 730, 87 S. Ct. 788 (1967), and reasonableness is a distinctly fact-based inquiry. *Houser*, 95 Wn.2d at 138; *South Dakota v. Opperman*, 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976). No court can foresee all that might arise in the future, and no list can ever be devised to cover all contingencies. The *Houser/*

---

[5]Huff also argues that the phrase "used in the commission of a felony" does not include the mere presence of contraband in the car. We assume but do not hold that that is correct.

*Simpson* list is a compilation of past automobile seizure decisions, but it was not intended as an exclusive list that would preclude automobile seizures in all other fact circumstances.[6]

In light of the foregoing, we hold that when an officer has probable cause to believe that a car contains contraband or evidence of crime, he or she may seize and hold the car for the time reasonably needed to obtain a search warrant and conduct the subsequent search. It makes no constitutional difference whether this is done by placing a guard on the car at the scene or by towing it to the police station or an impound yard. *Cf. State v. Terrovona, supra* (officers stationed inside residence); *State v. Ng, supra* (same); *Chambers v. Maroney, supra* (car towed to police station). Either involves approximately the same degree of interference with possession. Cox's seizure of the Lincoln was valid because he had probable cause to search it, and because he seized it only for the time reasonably needed to obtain a warrant and then search.

### III

 Huff's remaining contentions relate to jury instructions and sufficiency of the evidence. He argues that the evidence was insufficient to prove constructive possession beyond a reasonable doubt. We disagree. Evidence is sufficient to support a conviction if, when viewed in the light most favorable to the State, it is such that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980); *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979). A defendant may be shown to be in constructive possession of a controlled substance when he "has dominion and control over either the drugs or the premises upon which the drugs were found."

---

[6]One instance in which the court has approved the warrantless seizure of a car under circumstances not included in the *Houser/Simpson* list is *Lowery v. Nelson,* 43 Wn. App. 747, 719 P.2d 594 (car used to transport drugs; seizure for purposes of forfeiture), *review denied,* 106 Wn.2d 1013 (1986), *appeal dismissed,* 479 U.S. 1024 (1987).

*State v. Mathews*, 4 Wn. App. 653, 656, 484 P.2d 942 (1971). A vehicle is a "premises" for purposes of this inquiry. *State v. Mathews, supra.*

Here, the State produced evidence to show that Huff was driving a car in which drugs were found; the inside of the car smelled like methamphetamine; Huff smelled like methamphetamine; Huff did not stop when the officer was behind him with emergency lights flashing; while Huff continued to drive, his passenger, seated next to him, looked back and made furtive movements; and the drugs were found hidden under laundry in the backseat. Viewed in the light most favorable to the State, this evidence is such that a rational trier could find beyond a reasonable doubt that Huff had dominion and control over the drugs. *State v. Potts*, 1 Wn. App. 614, 617, 464 P.2d 742 (1969) (reasonable to infer dominion and control where defendant had car keys and was driving); *State v. Mathews*, 4 Wn. App. 653, 656, 484 P.2d 942 (1971) (reasonable to infer dominion and control where defendant was passenger in car and other circumstances connected him to the drugs).

As part of his sufficiency argument, Huff attempts to analogize to cases holding that a temporary visitor in a residence does not have dominion and control over that residence. *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969); *State v. Gutierrez*, 50 Wn. App. 583, 592, 749 P.2d 213, *review denied*, 110 Wn.2d 1032 (1988); *State v. Spruell*, 57 Wn. App. 383, 388, 788 P.2d 21 (1990). In those cases, the evidence presented was insufficient to warrant a reasonable inference of dominion and control. In the present case, the evidence was clearly adequate to support such an inference. *State v. Potts, supra; State v. Mathews, supra.*

■ Huff next contends that the court erred by failing to instruct the jury that the State must prove beyond a reasonable doubt that he knowingly possessed the drugs. Again, we disagree. In Washington, it is well settled that the defendant bears the burden of proving unknowing possession, as opposed to the State bearing the burden of proving knowing possession. *State v. Cleppe*, 96 Wn.2d 373, 381,

635 P.2d 435 (1981), *cert. denied*, 456 U.S. 1006 (1982); *State v. Quintero-Quintero*, 60 Wn. App. 902, 808 P.2d 183 (1991); *State v. Knapp*, 54 Wn. App. 314, 318, 773 P.2d 134, *review denied*, 113 Wn.2d 1022 (1989); *State v. Hystad*, 36 Wn. App. 42, 49, 671 P.2d 793 (1983).

 Huff next contends that the court erred by refusing to instruct the jury that it must find more than mere presence or close proximity to the drugs to establish constructive possession. Again, we disagree. It is true that the jury must find more than mere proximity, *State v. Gutierrez*, 50 Wn. App. 583, 592, 749 P.2d 213, *review denied*, 110 Wn.2d 1032 (1988); *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969), but under the circumstances present here the instruction defining constructive possession adequately allowed Huff to argue his case to the jury.

 Lastly, Huff contends that the court erred by declining to instruct the jury that the State had the burden of proving constructive possession by "substantial" circumstantial evidence. The argument confuses the burden of production with the burden of proof. The phrase "substantial evidence" describes the burden of production in all cases, *In re C.B.*, 61 Wn. App. 280, 286, 810 P.2d 518 (1991), while the phrase "beyond a reasonable doubt" describes the burden of persuasion in criminal cases. The burden of production is applied by the judge, while the burden of persuasion is applied by the jury. *In re C.B.*, *supra* at 282-83. It follows that the question of "substantial evidence" is for the judge, not the jury, and that the judge in this case correctly declined to include it in the instructions that he gave to the jury. The instruction needed by the jury was one describing the burden of persuasion, and the judge gave such an instruction in appropriate form.

Affirmed.

PETRICH, C.J., and ALEXANDER, J., concur.

Review denied at 119 Wn.2d 1007 (1992).