73 P.3d 1011 (2003)
STATE of Washington, Respondent,
v.
Duane Alan DOLAN, Jr., Appellant.
No. 28363-8-II.
Court of Appeals of Washington, Division 2.
July 3, 2003.
Publication Ordered July 29, 2003.
As Amended October 7, 2003.
*1012 Richard Alan Melnick, Attorney at Law, Kathleen Ann Hart, Clark County Prosecutors Office, Vancouver, WA, for Respondent.
R.A. Lewis, Attorney at Law, Camas, WA, for Appellant.

OPINION PUBLISHED IN PART
MORGAN, J.
Duane Alan Dolan, Jr., appeals his conviction for assault of a child in the second degree. We reverse and remand for new trial.
In March 2001, Dolan was living with Jamie Batts and two young children, Rollan and Raymond. Batts was the biological mother of both children. Dolan was the biological father of Raymond but not Rollan.
On March 31, 2001, Dolan was watching both children while Batts was out. When she returned at about 7 p.m., she went upstairs to wake Rollan from his nap. She "saw broken blood vessels clear across his throat, and [] started freaking out."[1] Dolan denied injuring Rollan, they argued, and he left the apartment. Batts went looking for him, found him, and they continued arguing.
Four hours later, Batts took Rollan to the emergency room. She attributed the four-hour delay to arguing with Dolan, being scared of an outstanding warrant, and needing to get a ride because the lights on her car did not work.
*1013 The State charged Dolan with assault of a child in the second degree. A trial ensued, at which the main issues involved the nature and cause of Rollan's injuries. Dolan denied inflicting Rollan's injuries; he theorized either that Batts had inflicted them or that Rollan had self-inflicted them. Dr. Geraldine Stark testified that she had examined Rollan at the emergency room, and that Rollan's bruises indicated deep injury not likely to have been self-inflicted.[2] Dr. William Brady testified that the marks were superficial skin abrasions that could have resulted from quickly rubbing the skin without much force or pain.[3] Dr. John Stirling testified that the injuries were not accidental and were caused by significant force on the child's throat.[4] The jury convicted, and the court imposed 36 months.
Dolan raises a number of issues on appeal. He claims that the trial court erred by (1) excluding evidence supporting an inference that Batts was biased against him; (2) admitting opinions from a police officer and social worker that Batts was not a cause of Rollan's injuries; (3) giving Jury Instruction 12, which said that bruising and swelling can be "sufficient evidence" of substantial bodily harm; (4) refusing to instruct on third and fourth degree assault; (5) excluding Batts's prior convictions; (6) restricting him from arguing that Batts's access to Rollan cast doubt on whether he had injured the boy; (7) allowing the prosecutor to question him on uncharged acts involving other children; and (8) giving a "to convict" instruction that did not state all the elements of the crime.

I.
Dolan argues that the trial court erred by excluding evidence of Batts's motives and bias. At trial, he offered to prove that he and Batts were engaged in a bitter custody dispute over Raymond and that Batts had promised to make "this whole thing go away" if Dolan would relinquish custody of Raymond.[5] By excluding both offers, Dolan now asserts, the trial court violated both the rules of evidence and his federal constitutional right to confront the witnesses against him.
The State does not deny that Dolan and Batts were involved in a custody dispute over Raymond at the time of the trial in this case. The State responds, however, that the evidence was irrelevant because it involved "a collateral matter" that "had nothing to do with [Batts's] `perception and credibility' ... in the assault case[,]" and because "[t]he entire custody case arose after [Dolan] was charged with assaulting Rollan."[6]
The Sixth Amendment's confrontation clause requires that an accused be permitted to cross-examine a witness for bias.[7] The rules of evidence do also.[8] Bias can arise from a variety of circumstances, including civil proceedings between the victim and the defendant.[9] Bias includes that which exists at the time of trial, for the very purpose of impeachment is to provide information that the jury can use, during deliberations, to test the witness' accuracy while the witness was testifying.[10]
*1014 The evidence in issue here showed that Batts and Dolan were embroiled in a custody dispute at the time of trial. Regardless of whether the dispute had arisen after the assault and was being litigated in a separate action, its existence at the time of trial had a tendency to show Batts was biased against Dolan. Dolan had a right to present such bias to the jury, especially where the State's case rested heavily on Batts and was entirely circumstantial. The evidence should have been admitted; its exclusion was not harmless; and a new trial is required.

II.
Dolan argues that a police officer and case worker should not have been allowed to opine that Batts was not a cause of the bruising on Rollan's neck. The State asked the officer:
[PROSECUTOR:] When you talked to [Batts], was there any indication that she could have done this when you were investigating the case?
[OFFICER:] I don't believe so.[[11]]
The State asked the case worker:
[PROSECUTOR:] ... Why didn't CPS make the mother leave the residence?
. . . .
[CASE WORKER:] ... I didn't feel that the child was at risk with [the] mother, and she wasn't really the person in question.[[12]]
Every opinion must be based on knowledge.[13] Proper lay opinion is based on personal knowledge.[14] Proper expert opinion is based on scientific, technical, or specialized knowledge.[15] The opinions offered here were not based on either type of knowledge, and hence they were not admissible.[16]
In addition, a witness may not give, directly or by inference, an opinion on a defendant's guilt.[17] To do so is to violate the defendant's constitutional right to a jury trial and invade the fact-finding province of the jury.[18] "Particularly where such an opinion is expressed by a government official, such as a sheriff or a police officer, the opinion may influence the fact finder and thereby deny the defendant of a fair and impartial trial."[19] Here, the evidence showed that both Dolan and Batts had access to Rollan at pertinent times, and it was up to the jury, not a witness, to opine on the significance of that fact.
The State argues that Dolan opened the door to these otherwise improper opinions by eliciting from the caseworker, Magnano, Batts's prior inconsistent statement on who had put Dolan to bed on March 31, 2001. However, Dolan did not elicit improper opinion or invade the province of the jury, and he did not open the door.
The State argues that Dolan waived his objections by not making them at trial. Because improper opinion testimony violates the constitutional right to a trial by jury, it may be raised for the first time on appeal.[20] *1015 It may be raised now, and even if it could not be, other errors would warrant reversal.
The State argues that the improper opinions constituted harmless error. Given that improper opinion testimony violates the constitutional right to a jury trial,[21] it must be harmless beyond a reasonable doubt.[22] We cannot say that the evidence in issue here meets that test, especially when cumulated with the other errors noted herein.[23]

III.
Dolan argues that the trial court should have given Jury Instruction 11, but not Jury Instruction 12. Jury Instruction 11 stated:
Substantial bodily harm means bodily injury that involves a temporary but substantial disfigurement, or that causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or that causes a fracture of any bodily part.[[24]]
Jury Instruction 12 stated:
The presence of bruising and swelling can be sufficient evidence of substantial bodily harm. The bruising and swelling can constitute temporary but substantial disfigurement.[[25]]
Jury Instruction 11 appears in the Washington Pattern Instructions, while Jury Instruction 12 does not. Dolan objected to Instruction 12 on the ground that it forced the jury to find substantial bodily harm if the jury believed there was any degree of bruising and swelling. Relying on State v. Ashcraft[26] and State v. Brown,[27] the trial court ruled that Instruction 12 was necessary because Instruction 11 "doesn't give the jury any direction as to what the status of the law is."[28]
We faced a similar problem in State v. Huff.[29] The defendant proposed an instruction saying the State had to prove constructive possession by "substantial" circumstantial evidence. The judge refused to so instruct. We affirmed, holding as follows:
The phrase "substantial evidence" describes the burden of production in all cases, while the phrase "beyond a reasonable doubt" describes the burden of persuasion in criminal cases. The burden of production is applied by the judge, while the burden of persuasion is applied by the jury. It follows that the question of "substantial evidence" is for the judge, not the jury, and that the judge in this case correctly declined to include it in the instructions that he gave to the jury.[[30]]
These concepts hold true here. The court had the duty to decide whether evidence of bruising and swelling was sufficient to go to the jury (as clearly it was in both Ashcraft and Brown). The court could not properly delegate its duty to the jury, and thus it had no reason to instruct the jury that bruising and swelling "can be sufficient evidence of substantial bodily harm." At best, the instruction was immaterial to the function of the jury and misleading to jurors untrained in the distinctions between production and persuasion. At worst, it improperly commented[31] that evidence showing bruising and *1016 swelling also shows substantial bodily harm. Instruction 11 gave each party a proper legal platform from which to argue its position to the jury, and Instruction 12 should not have been given.
Reversed and remanded for new trial.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] Report of Proceedings (RP) at 121.
[2] RP at 219.
[3] RP at 240-42.
[4] RP at 331.
[5] RP at 40-42, 46-49.
[6] Br. of Resp't at 8-9.
[7] Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
[8] United States v. Abel, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984).
[9] State v. Boesseau, 168 Wash. 669, 671, 13 P.2d 53 (1932); State v. Eaid, 55 Wash. 302, 307-08, 104 P. 275 (1909); State v. Constantine, 48 Wash. 218, 220, 93 P. 317 (1908); State v. Guizzotti, 60 Wash.App. 289, 292-94, 803 P.2d 808, review denied, 116 Wash.2d 1026, 812 P.2d 102 (1991); Wayne F. Foster, Annotation, Right to Cross-Examine Prosecuting Witness As To His Pending or Contemplated Civil Action Against Accused for Damages Arising Out Of Same Transaction, 98 A.L.R.3d 1060, 1065-67 (1980); cf. Alston v. Blythe, 88 Wash.App. 26, 40-41, 943 P.2d 692 (1997).
[10] Cf. State v. Harmon, 21 Wash.2d 581, 590-91, 152 P.2d 314 (1944) (within trial court's discretion to determine if statement was made close enough to trial to indicate bias at time of testimony); State v. Tigano, 63 Wash.App. 336, 344-45, 818 P.2d 1369 (1991), review denied, 118 Wash.2d 1021, 827 P.2d 1392 (1992) (impeachment may focus on time of event or time of trial).
[11] RP at 192.
[12] RP at 291.
[13] ER 701; ER 702; State v. Kunze, 97 Wash. App. 832, 850, 988 P.2d 977 (1999), review denied, 140 Wash.2d 1022, 10 P.3d 404 (2000); Riccobono v. Pierce County, 92 Wash.App. 254, 268, 966 P.2d 327 (1998).
[14] ER 701; Kunze, 97 Wash.App. at 850, 988 P.2d 977; State v. Carlson, 80 Wash.App. 116, 124, 906 P.2d 999 (1995); Advisory Committee's Note to FRE 701, 56 F.R.D. 183, 281.
[15] ER 702; Kunze, 97 Wash.App. at 850, 988 P.2d 977; Carlson, 80 Wash.App. at 124, 906 P.2d 999.
[16] See Kunze, 97 Wash.App. at 850, 988 P.2d 977; Carlson, 80 Wash.App. at 124, 906 P.2d 999.
[17] State v. Madison, 53 Wash.App. 754, 760, 770 P.2d 662, review denied, 113 Wash.2d 1002, 777 P.2d 1050 (1989).
[18] State v. Demery, 144 Wash.2d 753, 759, 30 P.3d 1278 (2001).
[19] State v. Carlin, 40 Wash.App. 698, 703, 700 P.2d 323 (1985).
[20] State v. McFarland, 127 Wash.2d 322, 332-33, 899 P.2d 1251 (1995).
[21] Demery, 144 Wash.2d at 759, 30 P.3d 1278.
[22] Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Guloy, 104 Wash.2d 412, 425, 705 P.2d 1182 (1985), cert. denied, 475 U.S. 1020, 106 S.Ct. 1208, 89 L.Ed.2d 321 (1986).
[23] See State v. Perrett, 86 Wash.App. 312, 322-23, 936 P.2d 426, review denied, 133 Wash.2d 1019, 948 P.2d 387 (1997).
[24] Clerk's Papers (CP) at 90.
[25] CP at 91.
[26] 71 Wash.App. 444, 455, 859 P.2d 60 (1993) ("The presence of the bruise marks indicates temporary but substantial disfigurement").
[27] 60 Wash.App. 60, 802 P.2d 803 (1990), review denied, 116 Wash.2d 1025, 812 P.2d 103, overruled on other grounds by State v. Grewe, 117 Wash.2d 211, 219-20, 813 P.2d 1238 (1991).
[28] RP at 312.
[29] 64 Wash.App. 641, 826 P.2d 698, review denied, 119 Wash.2d 1007, 833 P.2d 387 (1992).
[30] 64 Wash.App. at 655, 826 P.2d 698 (citation omitted).
[31] See WA. CONST. art. IV, § 16.