[Nos. 31742-7-II; 31779-6-II;   Division Two.   November 22, 2005.]
32010-0-II.

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM CHESLEY
MOLES ET AL., *Appellants*.

*Mary Katherine Young High, Reed Manley Benjamin Speir, Stephanie C. Cunningham,* and *Sheri L. Arnold,* for appellants.

*Gerald A. Horne, Prosecuting Attorney,* and *P. Grace Kingman* and *Kathleen Proctor, Deputies,* for respondent.

¶1 VAN DEREN, A.C.J. — William Chesley Moles, Louis Gouveia Cambra, and Alan Robert Conn appeal their convictions for unlawful possession of pseudoephedrine with intent to manufacture methamphetamine, as well as Cambra's separate conviction for unlawful possession of a controlled substance, and Moles' separate convictions for first degree possession of stolen property and making a false or misleading statement to a public servant. They assert that: (1) the evidence fails to support their convic-

tions for possession of pseudoephedrine with intent to manufacture methamphetamine, (2) the trial court erred by denying their motion to suppress, and (3) jury instruction 11 was ambiguous and thus the State's argument based on jury instruction 11 was a misstatement of the law. We affirm.

## FACTS

¶2 On August 9, 2003, Officer Byerley was on routine patrol when he received a dispatch informing him that three males in a reported stolen (unconfirmed) red Geo Prism had purchased the maximum allowed quantity of psuedoephedrine from two local grocery stores.

¶3 Byerley observed a red Geo Prism matching the dispatch description and license plate number parked in a drugstore parking lot. Two males exited the store and got into the car. Byerley stopped the car as it left the parking lot and requested backup assistance. Once Officer Scott Lane arrived on the scene, the officers asked the three individuals to exit the vehicle one at a time. The officers then handcuffed and searched the defendants before placing them in a police car.

¶4 Byerley found store receipts from two grocery stores in Conn's right pocket, reflecting the purchase of three Allerfed® packets and three Triphed packets. Byerley found a plastic bag containing brown powder residue, a second bag containing white powder residue, and several coffee filters in Cambra's pockets. Byerley advised Cambra of his *Miranda*[1] rights. Cambra acknowledged that he understood his rights and agreed to talk to the officer. He stated that Moles had possessed the stolen car for several days and that the three defendants had been purchasing pseudoephedrine from various stores.

¶5 After taking the defendants into custody, Byerley noticed that the Prism's ignition had been "punched," and

[1] *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

contacted dispatch to confirm that the Prism was stolen. Report of Proceedings (RP) at 25. A subsequent search of the Prism revealed (1) four empty blister packs; (2) one box of Suphedrine; (3) a grocery bag containing two empty blister packs and one full package of pseudoephedrine and several loose white pills; (4) a second grocery bag containing two empty boxes of Suphedrine, two blister packs, and numerous loose white pills; and (5) a black bag with two sealed packages of Contac® Cold Medicine.[2] According to Byerley's trial testimony, he found almost 440 loose white pills in the vehicle.

¶6 The State charged all three defendants with unlawful possession of pseudoephedrine with intent to manufacture methamphetamine. The State charged Cambra with unlawful possession of a controlled substance. The State also charged Moles with first degree possession of stolen property and with making a false or misleading statement to a public servant.

¶7 At the pretrial suppression hearing, Byerley testified that he stopped the Prism "because it was a reported stolen vehicle." RP at 25. The court denied the defendants' motion to suppress.

¶8 At trial, Byerley testified that he was a member of the Pierce County Sheriff's clandestine lab team and that he had training in identifying controlled substances. He further testified that the first stage of the manufacturing process is the acquisition of pseudoephedrine tablets that are then crushed and mixed with a solvent. The mixture is strained through a coffee filter, separating the drug from the liquid mixture. Frank Boshears, a forensic scientist, testified that he tested the white tablets, the tan powder, and the white powder residue on the coffee filters. The tablets contained pseudoephedrine. He further testified that the tan powder, and the white powder residue on the coffee filters, tested positive for methamphetamine.

---

[2] The pills seized by the officers all contained pseudoephedrine or ephedrine that can be separated from the other ingredients to be used in the manufacture of methamphetamine.

¶9 Chung Hoon Lee testified that he shared the Prism with his parents and that it had been stolen. He testified that he called 911 to inform the police about the theft but that it was "probably" his brother who filled out the written report. RP at 212.

¶10 The jury found all three defendants guilty as charged. Defendants filed timely notices of appeal.

## ANALYSIS

### SUFFICIENCY OF THE EVIDENCE

¶11 Defendants argue that their convictions must be reversed because the jury did not have sufficient evidence to find that they possessed pseudoephedrine with intent to manufacture methamphetamine. The State responds that the evidence was sufficient because the jury could infer intent to manufacture from the quick succession of cold pill purchases, the drugs in Cambra's pocket, and the large number of loose pseudoephedrine tablets in the car.

■■ ¶12 Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980) (citing *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975)).

¶13 To establish that defendants possessed pseudoephedrine with intent to manufacture methamphetamine, the State had to prove that they (1) possessed pseudoephedrine and (2) intended to use the pseudoephedrine to manufacture methamphetamine. RCW 69.50.440. Manufacture is "the production, preparation, propagation, compounding, conversion, or processing of a controlled sub-

stance, either directly or indirectly." RCW 69.50.101(p); *State v. Davis*, 117 Wn. App. 702, 708, 72 P.3d 1134 (2003), *review denied*, 151 Wn.2d 1007 (2004).

¶14 Bare possession of a controlled substance is not enough to support an intent to manufacture conviction; at least one additional factor, suggestive of intent, must be present. *State v. McPherson*, 111 Wn. App. 747, 759, 46 P.3d 284 (2002). A person acts with intent when he acts with the objective or purpose to accomplish a result that constitutes a crime. RCW 9A.08.010(1)(a). A person who knowingly plays a role in the manufacturing process can be guilty of manufacturing, even if someone else completes the process. *Davis*, 117 Wn. App. at 708.

¶15 Here, the State presented sufficient evidence for a rational trier of fact to find the defendants guilty of unlawful possession[3] of pseudoephedrine and/or ephedrine with intent to manufacture methamphetamine. RCW 69-.50.440. Byerley counted almost 440 loose white pseudo-ephedrine pills in the defendants' stolen vehicle. The pills had been removed from the blister packs. Byerley testified that the first stage in the manufacturing process is to acquire pseudoephedrine tablets and then process them. The fact that so many pills had been removed from the blister packs leads to the only plausible inference: that the defendants were in the process of preparing the pseudoephedrine for the first stage of the manufacturing process. We hold that this alone is sufficient to support the jury's finding of intent to manufacture. Further, Byerley found a coffee filter with methamphetamine residue in defendant Cambra's pocket. And the defendants were acting in concert to purchase the maximum allowable amount of cold pills containing pseudoephedrine from various stores over a short period of time. Thus, additional factors suggesting manufacture exist, and the evidence was sufficient

---

[3] Possession of the pseudoephedrine is not disputed. Alternatively, the record is sufficient to support the jury's finding of possession. *See, e.g., State v. Huff*, 64 Wn. App. 641, 653-54, 826 P.2d 698 (1992).

to support a manufacturing conviction for each of the three defendants.

¶16  A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON and ARMSTRONG, JJ., concur.

Review denied at 157 Wn.2d 1019 (2006).