# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
                       )       No. 73222-6-I
           Respondent, )
                       )       DIVISION ONE
       v.                 )
                       )       UNPUBLISHED OPINION
MARK DANIEL SCHILLING, )
                       )
           Appellant. )       FILED: March 7, 2016
                       )

APPELWICK, J. — Schilling appeals his conviction for possession of heroin, challenging the denial of his motion to suppress. Because the delay of five and a half days between his arrest and the search of his impounded vehicle was not unreasonable under the circumstances, we affirm.

## FACTS

On Wednesday January 7, 2015, City of Arlington Police Officer Rory Bolter was working his usual shift, from 1:00 pm to 11:00 pm. At about 8:00 p.m., Officer Bolter and his partner initiated a traffic stop to arrest Mark Schilling based on outstanding warrants. Officer Bolter activated the emergency lights on the patrol car so that Schilling, who was driving a truck, would pull over. Schilling continued to drive for approximately a mile and finally pulled into the driveway of his residence. When Schilling stopped, the officers promptly arrested him.

After Schilling was in custody, Officer Bolter observed from outside the truck a pen tube with a melted tip in the center console. The officer recognized this as a device used to smoke heroin. Based on this observation and Schilling's admission that he was a heroin user, Officer Bolter sealed the vehicle and arranged for it to be transported to the police station impound lot until he could secure a search warrant.

The next day, on Thursday January 8, Officer Bolter arranged for a Marysville police officer to apply his canine partner to Schilling's truck. The search occurred at approximately 4:00 or 5:00 p.m. The dog alerted, indicating the presence of drugs.

Officer Bolter did not apply for a search warrant on January 8 or on Friday, January 9. He was then off duty for three days, Saturday through Monday. On his next work day, Tuesday, January 13, 2015, he secured and executed the search warrant. Upon searching Schilling's truck, Officer Bolter found 4.8 grams of methamphetamine and 50 grams of heroin.

The State charged Schilling with possession of heroin. He moved to suppress the evidence, arguing, in part, that the delay of five and a half days between seizing the vehicle and obtaining the warrant was an unreasonable delay. The court denied the motion, concluding that the duration of the seizure was reasonable in this case. The court observed that there was "no real guidance as to what is and what is not a reasonable amount of time" in this context. The court determined that while a ten day delay might be unreasonable,

the court was unaware of any requirement for police officers to "immediately put aside other work to apply for a search warrant of an impounded vehicle."

On a stipulated record, the court then found Schilling guilty as charged. He appeals the denial of his suppression motion.

## DISCUSSION

In State v. Terrovona, 105 Wn.2d 632, 645-46, 716 P.2d 295 (1986), the Washington Supreme Court held that, if police officers have probable cause to search, they may seize a residence for the time reasonably needed to obtain a search warrant. This court has since extended this rule to automobiles and other personal property. State v. Huff, 64 Wn. App. 641, 650, 826 P.2d 698 (1992); State v. Lund, 70 Wn. App. 437, 448-49, 853 P.2d 1379 (1993). Schilling does not challenge the authority of the police to seize his vehicle based upon probable cause to believe that it contained contraband. He does, however, challenge the length of the seizure, pointing out that the authority to seize articulated in this line of cases does not allow the police to hold a vehicle "indefinitely." He contends that the five and a half day delay in this case was unreasonable and amounted to an unconstitutional infringement on his possessory rights.

The facts are not in dispute. We review de novo the trial court's legal conclusions in ruling on a motion to suppress. State v. Carneh, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

The parties agree that Huff sets forth the applicable standard. In Huff, after arresting the driver and passenger of a vehicle, police officers arranged for the vehicle to be towed to the police station based upon probable cause to

3

believe there was methamphetamine inside. 64 Wn. App. at 644. The police held the vehicle at the police station until they obtained and executed a search warrant. Id. It is not clear how much time elapsed between the impoundment and execution of the warrant. See id. On appeal, Huff argued, among other things, that the police violated his constitutional rights by seizing and holding his vehicle for the purpose of obtaining the warrant. Id. at 648. The appellate court recognized that the police did not violate Huff's privacy rights, but rather infringed upon his possessory interest in the property for a longer period of time than would have been required had the police merely searched the vehicle at the scene of arrest. Id. at 649, 650-51. Nevertheless, the court observed that the officer pursued "a course of action that the law prefers" by seeking a warrant to search. Id. at 649. And, moreover, if the police lacked authority to seize and hold vehicles, it would "discourage and perhaps eliminate" the use of warrants in these circumstances. Id. at 651. Following the authority of the United States Supreme Court, this court held that "when an officer develops probable cause to believe that a car which he or she has lawfully stopped contains contraband, it is reasonable under the Fourth Amendment to seize and hold the car for 'whatever period is necessary' in order to obtain a search warrant." Id. at 650 (quoting Chambers v. Maroney, 399 U.S. 42, 51, 90 S. Ct. 1975, 26 L.Ed.2d 419 (1970)).

As the trial court observed, neither Huff nor subsequent cases, address the issue of when a seizure, justified at its inception, is longer than reasonably necessary such that it infringes upon constitutional rights. See id. at 649; see also State v. Flores-Moreno, 72 Wn. App. 733, 740-41, 866 P.2d 648 (1994).

4

Huff makes clear, however, that the constitutionality of a seizure depends on its reasonableness, which is a "distinctly fact-based inquiry." Huff, 64 Wn. App. at 652. According to the testimony at the suppression hearing, Officer Bolter did not attempt to secure a warrant on the date of arrest because of the late hour. He explained that he had been advised by local prosecutors to wait until business hours to apply for a warrant, barring emergent circumstances. Schilling argues that even if it was reasonable to hold the impounded vehicle overnight until January 8, it was not reasonable to wait until January 13 to obtain a warrant. He points out that Officer Bolter was on duty on January 8 and 9 and did not identify any specific work assignments that prevented him from obtaining a warrant on those days. Schilling also emphasizes Officer Bolter's testimony that the canine search merely added "extra" probable cause, but he did not consider it strictly necessary to establish probable cause. Schilling maintains that the delay was unreasonable because the officer's testimony about work duties that theoretically might have prevented him from obtaining a warrant failed to establish a "work-related barrier to obtaining a warrant on January 8[th] or January 9[th]."

It is true that, apart from arranging a canine search of the vehicle on January 8, Officer Bolter did not identify the tasks he performed during the two days after Schilling's arrest. Nevertheless, Officer Bolter testified in detail about what he typically does and what he was likely doing before he obtained a warrant on January 13, his third day of work following the arrest.

Officer Bolter testified that there are generally three to four officers on patrol in the City of Arlington at a time. The patrol officers are responsible for responding to 911 calls, patrolling high crime areas, and responding to citizen concerns and tips. In addition, patrol officers handle some "higher priority" cases typically assigned to detectives. Officer Bolter testified that his ability to obtain a warrant on a given day depends on the volume of 911 calls and the work required on other priority cases. Officer Bolter said that his typical practice is to secure a warrant for an impounded vehicle within three to four work days. In this case, he obtained and served the warrant within that timeframe.

Officer Bolter said that preparation of the warrant documents in this case took him, at most, a half hour. He also said that once warrant documents are prepared, a warrant generally requires an hour to an hour and a half wait at the courthouse. Officer Bolter explained that he and his partner share a patrol car, so obtaining a warrant temporarily renders both officers unavailable to respond to 911 calls. Officer Bolter's testimony about his responsibilities as a patrol officer and his explanation about how obtaining a search warrant affects the work of that department as a whole established that three to four work days is a reasonable timeframe for obtaining a warrant.

Moreover, as the State points out, a search warrant has a 10 day expiration period. See CrR 2.3 (c). If Officer Bolter had secured the warrant on the date of arrest, he would have had until January 17 to execute it. Officer Bolter served and executed the warrant well within 10 days of the arrest. As the court's findings implicitly recognize, the seizure was for a shorter duration than

6

would have been authorized by a warrant issued at the earliest opportunity. This also supports the court's determination that the seizure was reasonable.

The trial court did not err in concluding, under the particular facts of this case, that the length of the seizure was reasonable. We affirm.

WE CONCUR: